Edward **NISHNIC, et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Defendant.**

**Civ. A. No. 86–2802–LFO.**

United States District Court, District of Columbia.

Sept. 18, 1987.

As Amended Sept. 21, 1987.

See also, 671 F. Supp. 771.

John H. Broadley, Gregg Daffner, Herbert F. Janick, III, Jenner & Block, Washington, D.C., for plaintiffs.

Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, Robert C. Seldon, Asst. U.S. Attys., Washington, D.C., for defendant; Bruce J. Einhorn, Martin H. Sachs, Marshall Williams, U.S. Dept. of Justice, Washington, D.C., of counsel.

## MEMORANDUM

OBERDORFER, District Judge.

### I.

This memorandum addresses the second, third, fourth, and fifth phases of a voluminous Freedom of Information Act ("FOIA") suit in which plaintiffs seek access to various government documents relating to the investigation of John (a/k/a Ivan) Demjanjuk by the Justice Department's Office of Special Investigations ("OSI") and to his subsequent denaturalization. The first phase of this FOIA request was the subject of a memorandum filed May 15, 1987, holding that the work product privilege contained in 5 U.S.C. § 552(b)(5) protected certain investigative reports sought by plaintiffs from disclosure. *See Nishnic v. United States Dept. of Justice*, 671 F.Supp. 771 (D.D.C.1987), *appeal pending*. That Memorandum, together with the Memorandum filed March 16, 1987, relates the factual circumstances of these requests so that it is not necessary to reiterate them here.

The second phase of this FOIA request concerns 159 diplomatic messages transmitted from OSI or the Immigration and Naturalization Service ("INS") through the State Department to and from foreign governments. Of these documents, defendant has withheld one in its entirety

(Doc. 292), released eleven in full (Docs. 134–142, 252 and 278), and released in part and withheld in part, one hundred and forty seven (Docs. 143–251, 253–277, and 279–291). Fifteen additional diplomatic cables described in defendant's *Vaughn* index No. 3 (Docs. 487–500, 504), which were released in part, will also be considered in this phase.

Defendant bases its exemption claims variously on Exemption 2 (matters relating solely to an agency's internal personnel rules and practices); Exemption 5 (work product and deliberative process material involved in trial preparation and evidence evaluation); Exemption 6 (personnel and medical files and similar files whose disclosure would constitute a clearly unwarranted invasion of privacy); Exemption 7(A) (law enforcement records or information whose production could reasonably be expected to interfere with enforcement proceedings); Exemption 7(C) (law enforcement records or information whose production could reasonably be expected to constitute unwarranted invasion of personal privacy, in this case privacy of potential witnesses, individuals of investigative interest to OSI, OSI targets, third parties mentioned in reports, and Justice Department staff); and Exemption 7(D) (confidential sources, i.e., names of foreign entities which provided and are still providing information to OSI).

Defendant contends that these exemptions have been correctly applied to the documents in question and moves for partial summary judgment. Defendant has supported its motion with a *Vaughn* index which describes each of the 159 documents at issue, with copies of 141 redacted cables attached, as well as a Declaration by L. Jeffrey Ross ("2d Ross Dec."), Chief of the FOIA Unit in the Criminal Division of the Justice Department, which describes the exemptions that apply to those portions of the documents that have been withheld. Defendant also provides an Affidavit from Neal M. Sher ("Sher Aff."), Director of OSI, which analyzes in detail 12 sample diplomatic messages, an Affidavit from Bruce J. Einhorn, Senior Trial Attorney, OSI, and a detailed Statement of Material Facts Not in Dispute ("DSMF2").

## II.

### A.

Plaintiffs contend that defendant has not provided a sufficiently detailed factual foundation in its *Vaughn* index and supporting affidavits to justify the FOIA exemptions claimed. Plaintiff's Memorandum in Opposition to Defendant's Second Motion for Partial Summary Judgment ("Plaintiffs' 2d Opp.") at 1–4.

The Court of Appeals recently addressed the standard of specificity required of *Vaughn* indexes in FOIA cases. *See Senate of the Commonwealth of Puerto Rico v. United States Dept. of Justice*, 823 F.2d 574, 584–587 (D.C.Cir.1987). In that case, the Department of Justice ("DOJ") sought to withhold a number of documents enumerated in a FOIA request. In support of its withholdings, the DOJ submitted a *Vaughn* index that the district court described as "set[ting] out 'each document being withheld, why it is being withheld, and the nature of the document to the extent feasible without revealing any details regarding the privileged contents of the document.'" *Id.* at 17 (quoting Memorandum, No. 84–1829, mem. op. at 7 (D.D.C. Feb. 7, 1986)). The Court of Appeals rejected the district court's view that such explanations provided sufficient justification for the DOJ's claimed exemptions. The case was remanded with directions that the DOJ "supply additional information so that a reviewing court can sensibly determine whether each invocation of [the exemptions] is properly grounded." *Puerto Rico*, 823 F.2d at 584.

The Court in *Puerto Rico* relied on criteria established in *Mead Data Central, Inc. v. United States Dept. of the Air Force*, 566 F.2d 242 (D.C.Cir.1977). *See Puerto Rico*, 823 F.2d at 587 (noting that the "decision in *Mead Data* remains perhaps the best general guide" to the detail agencies must provide to support FOIA exemptions). *Mead Data* addressed withholding claims under FOIA Exemption 5. Before evaluat-

ing the particulars of the disputed claim, the Court announced a general rule:

> [W]hen an agency seeks to withhold information it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.

*Mead Data,* 566 F.2d at 251 (citing, *inter alia, Vaughn v. Rosen,* 484 F.2d 820, 826–28 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974)). A two-fold purpose appears to underlie this rule. First, a relatively detailed index permits "the requesting party to present its case effectively." *Mead Data,* 566 F.2d at 251 (footnote omitted). Second, a detailed explanation "allow[s] the courts to determine the validity of the Government's claims without physically examining each document." *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 861 (D.C.Cir.1980).

In an effort to achieve these purposes in FOIA litigation, a broad standard of specificity has been imposed on defendants seeking to withhold requested information. *Vaughn v. Rosen,* while announcing "that courts will [not] ... accept conclusory and generalized allegations of exemptions," 484 F.2d at 826 (citing *E.P.A. v. Mink,* 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973)), held that "[a]n analysis sufficiently detailed would not have to contain factual descriptions that if made public would compromise the secret nature of the information," *Vaughn,* 484 F.2d at 826. In *Mead Data,* the defendant had submitted affidavits in which "[t]he source, subject matter, and nature of each document were described separately, and although not individually stated for each document, it [was] clear from the nature of the documents ... which justifications apply to which documents." *Mead Data,* 566 F.2d at 252. The court there found that "the withheld documents [had been] described in sufficient detail to allow [plaintiff] to argue effectively against [defendant's] exemption claims." *Id.* at 251. Accordingly, the justifications provided an adequate foundation for judicial review of those claims.

Upon undertaking that review, the *Mead Data* Court ruled that "an agency must show by detailed and specific justification that information it seeks to withhold from public disclosure falls within one of the exemptions to the FOIA." *Id.* at 259. With respect to at least one document at issue, the court ruled that the Air Force had fallen short of that standard. The court admonished, "An agency cannot meet its statutory burden of justification by conclusory allegations" concerning an essential element of a FOIA exemption. *Id.* at 258.

In *Coastal States, Mead Data* served as the standard against which the Department of Energy's ("DOE's") exemption justifications were evaluated and found to be insufficient. The court noted that a typical entry in the DOE's index only

> identifie[d] who wrote the memorandum, to whom it was addressed, its date, and a brief description of the memorandum such as "Advice on audit of reseller whether product costs can include imported freight charges, discounts, or rental fees."

*Coastal States,* 617 F.2d at 861. The DOE had relied on such skeletal justifications to withhold entire documents under FOIA Exemption 5 as attorney work product and deliberative process information. *Id.* Citing the fact that the affidavits purporting to support the index were themselves no more than conclusory reiterations of the index's brief descriptions, the court ruled that the DOE's index was "inadequate to permit a court to decide whether the exemption was properly claimed." *Id.* The court found, for example, that descriptions like that quoted above could not establish that the withheld information had been compiled "in contemplation of litigation," *id.* at 864–66; nor that it was "predecisional," *id.* at 868–69. Because these two elements of Exemption 5 had been neither proven nor even addressed in the DOE's index and affidavits, the court could not "determine whether all elements of the privileges were present in each document." *Coastal States,* 617 F.2d at 861 (interpreting standard articulated in *Mead Data* ).

The court ruled, "[C]onclusory assertions of privilege will not suffice to carry the Government's burden of proof in defending FOIA cases." *Id.*

*Puerto Rico* adopted *Coastal States'* standard, *Puerto Rico*, 823 F.2d at 584, yet declined to "endeavor an encompassing definition of 'conclusory assertion,'" *id.* at 585. Instead, the court concluded, "[I]t is enough to observe that where no factual support is provided for an *essential* element of the claimed privilege or shield, the label 'conclusory' is surely apt." *Id.*

The DOJ had in that case submitted a *Vaughn* index which the court characterized as "consisting almost entirely of each document's issue date, its author and intended recipient, and the briefest of references to its subject matter...." *Id.* The DOJ's entire *Vaughn* index has been reproduced in an appendix to *Puerto Rico.* A typical entry reads:

| DOCUMENT | DELETION | EXEMPTION |
|---|---|---|
| .... | .... | .... |
| C–28 Memo dated 8–19–80 from Stephen Clark, Attorney, CRT, to the File. (1 page) RE: Telephone conversation. | Information pertaining to the preparation of information and matters for litigation is deleted as attorney work product. | (B)(5) |

*Puerto Rico*, 823 F.2d 590. Finding that such cursory descriptions failed to establish that the withheld documents had been prepared 'in contemplation of litigation,' the court concluded that "a critical element of the DOJ's entitlement to the claimed shield awaits proof." *Id.* at 586. Consequently, the court ruled that "[t]he information provided by the DOJ ... will not do." *Id.* at 585.

The DOJ's submissions in *Nishnic* satisfy the standard of specificity established in these cases. As an initial matter, it must be emphasized that in none of these four phases does the DOJ rely exclusively on a *Vaughn* index to meet its burden of proof under FOIA. In each phase, the DOJ has submitted an affidavit from Neal M. Sher in which he describes in general the entire group of documents at issue in that segment and then analyzes in detail a number of samples representative of the documents as a group. The Sher Affidavits represent careful and thorough explanations of the facts pertinent to the disputed documents, and to the Demjanjuk denaturalization proceedings generally. Mr. Sher, Director of OSI's criminal division, is the individual chiefly responsible for the enforcement of immigration and naturalization laws as they relate to all individuals who were associated with the Nazi government in Germany, or with its allies, and who participated in the persecution of Jews and others during the Holocaust. *See* Sher Aff. ¶¶ 1–4. The Sher Affidavits are factual declarations from one intimately acquainted not only with the materials at issue in this litigation but also with the surrounding history and present circumstances of OSI investigations. Plaintiffs have failed to impeach the credibility of Mr. Sher, of the representations in his affidavits, or of Defendant's Statements of Material Facts, which reflect those representations.

Finally, the DOJ has submitted with every *Vaughn* index redacted copies of the documents from which information has been withheld. Hundreds of pages of documents have been released to plaintiffs, often with only a small portion excised. This practice supplements the explanations in the *Vaughn* indices, Sher Affidavits, and Statements of Material Facts with the documents themselves, minus only those fragments for which an exemption has been claimed.

The DOJ has thus provided more, and more detailed, justifications for the exemp-

tions it claims than *Mead Data* and *Puerto Rico* demand. Yet had the DOJ sought to rely exclusively on their *Vaughn* indexes as support for withholding information, it would still have satisfied the standard for specificity and detail established in these cases. A typical index entry, describing a document withheld in full under FOIA Exemption 5, reads as follows:

| DOC. NO. | DESCRIPTION . . . | DESCRIPTION OF DELETIONS MADE | EXEMPTIONS |
|---|---|---|---|
| 100 | Memorandum, October 25, 1978, Martin Mendelsohn to file. | This is a one page memorandum to the file commemorating the events of a meeting among the trial attorneys preparing to litigate the *Demjanjuk* case. It memorializes the plans discussed and serves as a reminder for future reference of how duties were delegated. ATWP and PDPP. | (b)(5) |

Defendant's Fifth *Vaughn* index, at Doc. 100. This description certainly constitutes a "relatively detailed analysis" of the withheld document. *Vaughn v. Rosen*, 484 F.2d at 826. Further, the index entry "correlate[s] statements made in the Government's refusal justification with the actual portions of the document." *Id.* at 827. Moreover, the entry describes the "withheld documents . . . in sufficient detail to allow [plaintiff] to argue effectively against [defendant's] exemption claims." *Mead Data*, 566 F.2d at 251.

Finally, the DOJ's *Vaughn* indexes, considered alone and as part of a mutually reinforcing submission including affidavits and redacted documents, have permitted judicial determination of "whether all elements of the privileges were present in each document." *Coastal States*, 617 F.2d at 861. In *Puerto Rico*, the defendant had failed to adduce proof that the information withheld as attorney work product had been prepared "in anticipation of litigation," one element essential to a claim under Exemption 5. *See Puerto Rico*, 823 F.2d at 586. Plaintiff in that case sought information gathered by the DOJ regarding an incident that had occurred in 1978. The court noted with particular concern that the DOJ investigation had been closed officially in April of 1980 and had not been reopened until August of 1983. *Id.* The DOJ claimed the work product privilege as justification for withholding information gathered throughout the five years following the incident, including the three-year period during which the investigation had been officially closed. The DOJ had neglected, however, to provide "*any* additional support" to overcome the court's "reluctan[ce] to credit a claim that documents generated while there was no active investigation underway were prepared 'in anticipation of litigation.'" *Id.* (footnotes omitted).

In contrast, the defendant in this case established by formal representations of a fully informed attorney in oral argument on August 28, 1987 that all information withheld under Exemption 5 was compiled after early summer of 1976, when the DOJ commenced the investigation leading to the *Demjanjuk* denaturalization proceeding. *See* Transcript of August 28, 1987 Hearing ("Transcript") at 25–26. In 1982, before the appeals process had been exhausted in the denaturalization proceeding, the DOJ commenced deportation proceedings against Mr. Demjanjuk. That process was interrupted by the *Demjanjuk* extradition proceeding in 1983. Defendant represents that in the event that Mr. Demjanjuk returns to the United States, the pending deportation proceedings may resume. Transcript at 28–29. Thus, starting in 1976 and continuing through the present, the

DOJ has been actively and continuously preparing for or participating in litigation with a view to the denaturalization or deportation of Mr. Demjanjuk. Defendant here has avoided the pitfall encountered in *Puerto Rico,* where the DOJ failed to submit any evidence to prove that the withheld information had been compiled in anticipation of litigation, an essential element of Exemption 5. No similar lapse of proof has occurred in this case.

Accordingly, defendant's descriptions of and justifications for its claimed FOIA exemptions satisfy the burden of proof imposed by *Puerto Rico.*

### B.

■ Plaintiffs argue that defendant cannot "unilaterally" adopt a sampling procedure absent an agreement with plaintiffs. Plaintiffs' 2d Opp. at 5. Plaintiffs' challenge to the use of samples in the second and subsequent phases of this expansive FOIA suit must fail. First, there is ample support for the use of sampling in voluminous FOIA cases. *See Meeropol v. Meese,* 790 F.2d 942, 958–959 (D.C.Cir.1986). Second, plaintiffs ignore the fact that the authors of the *Vaughn* index examined each of the 159 documents at issue in this second phase; the sample is simply a *supplement* to a *Vaughn* index that describes each document and the factual basis for each exemption claimed by defendant. Redacted copies of the documents are also attached to the *Vaughn* index. Defendant's detailed analysis of 12 samples in this second phase thus supplements an already comprehensive catalogue of the 159 documents at issue.

The sampling method was first developed as a practical approach to voluminous FOIA disputes in which no complete descriptive index of every withheld document was available. In *Weisberg v. United States Dept. of Justice,* 745 F.2d 1476, 1489–90 (D.C.Cir.1984), sampling was endorsed even where the *Vaughn* index itself was based on a sample. Thus, sampling was held to be an appropriate substitute for an exhaustive catalogue such as defendant has submitted in this case.

*Vaughn v. Rosen,* in which this Circuit articulated the standards of specificity governing a FOIA defendant's claims of exemption, was itself applied by the District Court on remand to require an index describing only nine "representative reports" out of 2,448 reports requested by the plaintiff. *See Vaughn v. Rosen,* 523 F.2d 1136, 1139–40 (D.C.Cir.1975). The Court of Appeals affirmed the District Court's disposition on the basis of that nine-sample *Vaughn* index alone. *Id.* at 1140. Under this standard, the present defendant's more detailed analysis of 12 of the 159 diplomatic messages already described in the *Vaughn* index provides an appropriate foundation for evaluating defendant's claimed exemptions. Plaintiffs' challenge to the sampling method employed in this and subsequent phases ignores the sample's role as, essentially, a supplemental analysis of documents representative of all indexed documents. While this detailed representative analysis illuminates the nexus between the documents at issue and the various exemptions involved, that sample does not represent the sole source of information upon which to evaluate defendant's opposition to plaintiffs' FOIA request. Consequently, the sampling approach contributes to and does not disadvantage plaintiffs' effort to retrieve all documents to which they are entitled under FOIA.

Plaintiffs contend further that defendant has not explained why it decided that the 12 documents discussed by Mr. Sher in this phase are representative. Plaintiffs' 2d Opp. at 7. On the contrary, defendant has provided a satisfactory explanation of its rationale for selecting the 12 documents. According to an Affidavit by Bruce J. Einhorn ("Einhorn Aff."), filed with defendant's reply, after reviewing all 159 of the diplomatic messages, the 12 documents were selected by Mr. Sher and Mr. Einhorn as representative samples based on the foreign countries involved, the subject matter, and the nature and extent of material defendant believes to be exempt under FOIA. Einhorn Aff. ¶ 5. For example, two of the sample documents analyzed by Mr. Sher were notes from OSI to the Soviet Ministry of Foreign Affairs via the United States

Embassy in Moscow (Docs. 149, 182). The 159 documents described by the Sher Affidavit, *Vaughn* index No. 2, and DSMF2, albeit in lesser detail, contain 20 documents transmitted to or received from the Soviet Union. The balance of the 12 samples originate from or were transmitted to other countries, i.e., East Germany, West Germany, Switzerland, Austria, The Netherlands, Israel, and certain South American nations. Defendant's sample, considered together with the *Vaughn* index, the Second Ross Declaration, and the redacted documents, confirms that the defendant has identified and adequately described every document at issue in this phase of the suit.

With respect to the particular exemption claims raised in this second phase, the facts are fully summarized in DSMF2 and are not directly disputed by plaintiffs' Statement of Genuine Issues ("PSGI2"). Plaintiffs do challenge some of defendant's rationales, as discussed *infra* in Section III, but they do not traverse specific factual assertions. There are, of course, obvious limitations on the ability of plaintiffs in FOIA suits to challenge the description of documents and portions of documents that are withheld by defendants. Plaintiffs have failed, however, effectively to impeach the credibility of defendant's affidavits and *Vaughn* index as summarized in DSMF2. Accordingly, DSMF2 (incorporated herein by reference) can be honored as a fair exposition of the relevant facts.

### III.

Using the statement of material facts (DSMF2) as a matrix, analysis of both the facts there stated and the applicable law yield the following findings and conclusions:

■ 1. Defendant withheld file numbers and target identification numbers which appear on the originals of documents 143–147, 149–184, 188–198, 200–201, 203–205, 210–213, 215–216, 227, 248, 254–256, 258–259, 268–269, 271, 276, 279–280, 285, 287 and 289. DSMF2 ¶ 8; *Vaughn* index No. 2. Plaintiffs do not dispute this assertion. PSGI2 ¶ 3. Defendant also withheld file numbers on Docs. 487–497, 499–

500, and 504. *Vaughn* index No. 3. This information is exempt from disclosure by 5 U.S.C. § 552(b)(2) because this information relates solely to internal personnel practices of the relevant agency. As the May 15, 1987 Memorandum held, defendant's use of Exemption 2 "to delete all internal OSI file numbers is entirely reasonable." *Id.* at 11; *see Lesar v. United States Dept. of Justice*, 636 F.2d 472, 485–86 (D.C.Cir.1980) (symbols used to refer to FBI informants in FBI documents and records exempt from disclosure under Exemption 2). Budget appropriation numbers appearing on documents 185 and 266 are not exempt and should be disclosed.

2. Invoking FOIA Exemptions 6 and 7(C), defendant withholds from a number of documents the names of non-attorney, non-supervisory OSI personnel (including OSI investigators, historians, and secretaries) who, in the performance of their duties, were involved in the creation of the particular document. These documents include four Reports of Investigation ("ROIs"), Docs. 103–105 and 131, which were at issue in Defendant's First Motion for Partial Summary Judgment but were set aside for consideration in the context of the present motion for summary judgment. The documents at issue also include Docs. 143–146, 149–162, 164–184, 188–198, 200, 203, 210–213, 215–216, 234, 254–256, 259, 268–269, 271, 276, 279–280, 285, 287 and 289. DSMF2 ¶ 10. They also include Docs. 487–500, and 504. *Vaughn* index No. 3.

Invoking Exemptions 6 and 7(C), defendant has also withheld the names of other categories of individuals. The names of OSI targets other than Demjanjuk were withheld in Docs. 187, 246 and 253. DSMF2 ¶ 11; Defendant's Second Motion for Partial Summary Judgment at 16. The names of persons identified and/or interviewed as potential witnesses by government personnel were withheld in Docs. 103–104 (consideration of these documents was stayed in the Memorandum of May 15, 1987 concerning Defendant's First Motion for Partial Summary Judgment), 143–144, 146, 148–161, 163–167, 169–174, 178–179, 183, 194, 196, 198, 200, 203–205, 209, 212–

216, 218–230, 232–235, 237–239, 241–242, 245, 248, 254–256, 260, 262, 263, 264, 265, 269–270, 274, 275, 279–280, 282, 286, 288, and 290–291. DSMF ¶ 11; 2d Ross Dec. ¶ 8; Defendant's Second Motion for Partial Summary Judgment at 16. Finally, defendant has withheld the names of third parties incidentally mentioned in reports, and the names of other individuals of investigative interest to OSI for law enforcement purposes (but not yet charged) and who were not witnesses. These names were withheld in Docs. 145, 151, 156–158, 161–165, 167–168, 170–171, 175–183, 186, 191–193, 195, 199–202, 206–208, 211, 271, 220, 224, 231, 233, 236, 240, 243–244, 246–247, 254–257, 259, 261, 265–267, 269, 271, 281–283, 286–287, 289, and 291. DSMF2 ¶ 11; 2d Ross Dec. ¶ 8. They were also withheld in Docs. 490, 492, and 500. *Vaughn* index No. 3.

Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) applies to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemptions 6 and 7 both require a balancing of the personal privacy interest at stake against the public's interest in disclosure. *See Stern v. Federal Bureau of Investigation*, 737 F.2d 84, 91 (D.C.Cir.1984); *Fund for Constitutional Government v. National Archives*, 656 F.2d 856, 862 (D.C.Cir.1981); *Lesar*, 636 F.2d at 486.

By its terms, Exemption 7(C) provides broader protection for personal privacy interests. Exemption 7(C) protects information the disclosure of which could *reasonably* be expected to result in an unwarranted invasion of privacy. Exemption 6 imposes a greater burden on a defendant: under that provision, an agency may withhold requested information only if its disclosure *would* constitute a *clearly* unwarranted invasion of privacy. *See Stern*, 737 F.2d at 91 ("Exemption 7(C) places a great-

er emphasis on protecting personal privacy than does Exemption 6....").

Exemption 7(C) has a threshold requirement that the requested documents are "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7)(C). *See Pratt v. Webster*, 673 F.2d 408 (D.C.Cir.1982). Defendant contends that all of the documents at issue here were compiled between 1978 and 1985, during the course of, or as a result of, a law enforcement investigation of Demjanjuk and others pursuant to 8 U.S.C. § 1451(a) (denaturalization) and 8 U.S.C. § 1251(a) (deportation). DSMF2 ¶ 9; 2d Ross Dec. ¶ 6; Sher Aff. ¶ 10. Plaintiffs do not dispute that these particular documents were "records or information compiled for law enforcement purposes." PSGI2 ¶ 8. The government has met its burden of showing that the documents at issue meet the threshold requirement of 7(C).

All documents at issue in phase two, if exempt under Exemption 6, would also be exempt under the broader provision of 7(C) since it is undisputed that all documents meet that exemption's threshold requirement. Neither party, in addition, differentiates its analysis of the privacy issue here as between Exemption 6 or 7(C) claims. Accordingly, it is appropriate to evaluate all privacy-based deletions as though claimed under Exemption 7(C) alone.

In this second phase, defendant argues that the non-attorney OSI personnel whose names are deleted have a strong personal privacy interest in nondisclosure:

Based upon the highly publicized and emotionally charged nature of the proceedings involving John Demjanjuk (including his pending trial in Israel), disclosure of the identities of these individuals would constitute a clearly unwarranted invasion of their privacy, an impairment of their ongoing and official duties, and raise a real possibility that retaliation, coercion, harassment or annoyance would be directed at them or their families.

Sher Aff. ¶ 11(b). Defendant also describes threats of physical harm directed against OSI employees or supporters. *Id.*

The defendant has also argued in a persuasive affidavit of a knowledgeable expert that risks of reprisal or harassment would accompany disclosure of the names of individuals under investigation by OSI and names of individuals who have been interviewed as potential witnesses. *See* Sher Aff. ¶¶ 12(c), 12(d), 16(b), 17(b), 18(b), 19(b), and 21(b). As the Sher Affidavit states:

> The mere mention of an individual's identity in the record of a law enforcement proceeding ... may lead to harassment of the person or stigmatizing connotations. For example, such an individual may upon disclosure be regarded, however unfairly and incorrectly, as the subject of a law enforcement investigation or as a source of sensitive or critical information in such an investigation.

*Id.* at ¶ 12(c). Mr. Sher also described threats of physical harm directed against an OSI supporter, as well as the fact that two defendants in suits brought by OSI were later victims of bombings. *Id.* at ¶ 11(b). Defendant also argues that individuals who were identified or interviewed as potential witnesses by OSI, but who have not actually appeared as witnesses in any of the Demjanjuk proceedings, also have a strong privacy interest in nondisclosure. Holocaust survivors, in particular, have a strong privacy interest in not having their identity and war time experiences disclosed against their will. Disclosure may "raise a real possibility of retaliation, coercion, harassment, or annoyance" from OSI critics in light of the "highly publicized and emotionally charged nature of the proceedings against Demjanjuk." Sher Aff. ¶ 17(b)(2).

Plaintiffs challenge defendant's claim that all categories of persons involved in the documents in question possess a personal privacy interest recognized under Exemption 7(C), although they have now conceded that "persons who have been targeted by OSI have substantial privacy interests at stake." Plaintiffs' Memorandum in Opposition to Defendant's Third Motion for Partial Summary Judgment ("Plaintiffs' 3d Opp.") at 15 n. 8. The core of plaintiffs' opposition to defendant's privacy claims appears to be an argument that a general atmosphere of tension and a catalogue of threatening incidents cannot, without more, establish that any given individual's privacy interests are at risk.

■ Plaintiffs' challenge on these grounds does not accord with the law embodied in FOIA Exemption 7(C). At the outset, it must be emphasized that the statute's express terms establish a standard of proof for defendant that is far less stringent than plaintiffs advocate. Exemption 7(C) demands only that the information sought to be withheld be of the sort that, if disclosed, "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Plaintiffs appear to suggest that, for each individual whose identity is withheld, the defendant must prove a threat that is specific to that individual and likely—not only "reasonably expected"—to materialize or to recur as an actual invasion of personal privacy. However, as defendant points out, it is reasonable to expect that acts of retaliation and harassment directed against a Baltic-American who simply voiced support for the work of OSI could also be directed against witnesses or investigators who have contributed actively to OSI operations. Defendant argues, persuasively, that Exemption 7(C) would be eroded as a device for protecting personal privacy if only those persons who have already suffered annoyance or intimidation may benefit from its provision for nondisclosure. *See Lesar*, 636 F.2d at 487 (privacy interest of FBI agents recognized where disclosure of their role in investigating the King assassination "conceivably" could subject them to harassment); *see also New England Apple Council v. Donovan*, 725 F.2d 139, 142 (1st Cir.1984) (Exemption 7(C) protects non-supervisory law enforcement personnel from conceivable annoyance following disclosure of their identity; 7(C) not limited to cases involving an *"actual* showing of harassment or other harm to government officials" (citing *Lesar*, 636 F.2d at 487)).

Case law governing the application of 7(C) similarly fails to support plaintiffs' claim that the threatened invasion of a personal privacy interest must be proven more precisely for each category of persons named in these documents. The categories of persons found to possess privacy interests cognizable under 7(C) have been determined in this Circuit to be quite broad. In *Weisberg*, plaintiff sought information from the Department of Justice pertaining to the assassination of Dr. Martin Luther King, Jr. This Circuit held that Exemption 7(C) embraced the privacy interests of broad categories of individuals mentioned in documents pertaining to the King inquiry. Protected categories included FBI agents, persons who were investigated or interviewed, and third persons whose names appeared in the documents at issue. *Weisberg*, 745 F.2d at 1491. *Stern* determined that Exemption 7(C) also embraced privacy interests of "lower-level [FBI] employees" censured for negligence in an agency cover-up of illegal surveillance activities. *Stern*, 737 F.2d at 91. In *Lesar*, a FOIA case also having to do with information about Dr. King's assassination, Exemption 7(C) was invoked to protect the privacy interests not only of informants and FBI personnel, but also of Dr. King's family members and associates. *Lesar*, 636 F.2d at 487–88.

All of the categories of persons for whom defendant here asserts a privacy interest fall within those categories protected in this Circuit's recent 7(C) cases. Thus, plaintiffs' argument that defendant has not established that, for instance, the OSI investigator in a particular document has a privacy interest in his or her identity is simply inaccurate as a matter of law. As is true with FBI agents, OSI officials "have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives." *Lesar*, 636 F.2d at 487. This is not to approve, of course, a blanket exemption for the names of all OSI personnel in all documents, *id.* at 487–88; rather, it is to conclude that identification of the individuals involved in the Demjanjuk investigations

and proceedings would implicate their privacy interests "in light of the contemporary and controversial nature" of those proceedings. *Id.* at 488.

Not only does Exemption 7(C) embrace the interests of broad categories of persons, it also contemplates "invasions" of widely varied types. In *Puerto Rico*, this Circuit recognized "substantial" privacy interests at stake where disclosure of identities could lead to "embarrassment and potentially more serious reputational harm." *Puerto Rico*, 823 F.2d at 588. *Weisberg* recognized that "annoyance or harassment in [persons'] official or private lives" constituted the kind of invasion that 7(C) was intended to prevent. *Weisberg*, 745 F.2d at 1491. *Baez v. United States Dept. of Justice*, 647 F.2d 1328, 1339 (D.C.Cir.1980) enforced the application of 7(C) where disclosure of the identity of FBI agents could subject them to "discomfort". In *Lesar*, this Circuit sustained a 7(C) exemption, observing, "It is difficult if not impossible, to anticipate all respects in which disclosure might damage reputations or lead to personal embarrassment and discomfort." 636 F.2d at 488. *See Miller v. Bell*, 661 F.2d 623, 630 (7th Cir.1981) (holding that harassment need not rise to the level of endangering physical safety before the protections of 7(C) can be invoked), *cert. denied sub nom. Miller v. Webster*, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484 (1982). Moreover, persons whose names are mentioned in records compiled during an investigation such as that culminating in *Demjanjuk* may be stigmatized by their association with the atrocities revealed. *See Puerto Rico*, 823 F.2d at 588; *see also Stern*, 737 F.2d at 91–92 ("individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity"); *Bast v. United States Dept. of Justice*, 665 F.2d 1251, 1254 (D.C.Cir.1981) ("7(C) exemption recognizes the stigma potentially associated with law enforcement investigations and affords broader privacy rights to suspects, witnesses, and investigators"). Third parties mentioned in reports might also be stigmatized if their names are associated with OSI investiga-

tions. *Miller,* 661 F.2d at 631–32. Finally, a personal privacy interest has been recognized in an official's capability to perform his public tasks effectively by avoiding untoward annoyance or harassment. *New England Apple Council,* 725 F.2d at 143.

In the second phase of *Nishnic,* defendant seeks to protect a number of categories of individuals from invasions of personal privacy. In support of its claims, defendant has described an atmosphere of tension, intimidation, and actual violence that surrounds OSI investigations pertaining to the Demjanjuk proceedings. The examples of harassment that defendant relates give acute definition to that more general description. *See Lesar,* 636 F.2d at 488 (affirming 7(C) exemption of information even though defendant had spoken "in somewhat general terms of the privacy interest at stake[,]" where further inquiry could not have been made without revealing withheld information). Given the broad range of individuals protected from a similarly broad variety of "invasions" of privacy under this Circuit's interpretation of 7(C), defendant has carried its burden of proving that legitimate and substantial personal privacy interests would be threatened by recognized "invasions" upon disclosure of the identities now deleted from the documents at issue. Plaintiffs' argument to the contrary must be rejected.

Since the individuals at issue possess personal privacy interests of the sort contemplated by Exemption 7(C), and since disclosure of their identities would result in the kind of "invasion" of privacy that 7(C) was designed to prevent, there remains for consideration the question of whether such an invasion would be "unwarranted." 5 U.S.C. § 552(b)(7)(C). Exemption 7(C) requires a balancing of the interest in personal privacy against the public interest in disclosure. *See Puerto Rico,* 823 F.2d at 587; *Stern,* 737 F.2d at 91.

Plaintiffs contend that the defendant has failed to provide the information necessary for the Court to assess the propriety of defendant's exception claims under 7(C). Plaintiffs' 2d Opp. at 23. Plaintiffs are mistaken. As discussed above, defendant here has firmly established that recognized personal privacy rights of persons embraced by 7(C) would be threatened upon disclosure of the identities now redacted in the documents at issue. It is plaintiffs who have failed to establish a countervailing public interest in disclosure that would require tipping of the balance away from the protection of these substantial privacy interests.

Plaintiffs have not demonstrated a countervailing public interest in disclosure of the names of non-supervisory OSI personnel. They are not potential witnesses against or for Mr. Demjanjuk and there is a very real danger that they will be subjected to threats and harassment by critics of OSI. *See Lesar,* 636 F.2d at 487–88 (FBI personnel have legitimate privacy interest in avoiding disclosure of their names when disclosure could subject them to annoyance or harassment; no countervailing public interest in disclosure).

Plaintiffs also have not demonstrated a countervailing public interest in disclosure of the names of OSI targets, persons of investigative interest to OSI, or third parties mentioned in OSI reports. There is, in fact, a strong public interest in favor of nondisclosure. There is uncontradicted expert opinion that ongoing investigations could be compromised and the flow of information to OSI impeded if these names were disclosed. Sher Aff. ¶¶ 12(d), 15(c), 15(e), 18(b).

At an earlier stage in these proceedings, plaintiffs aroused the Court's concern that the defendant might not be as responsive to the plaintiffs' requests as the dramatic circumstances of this case justify. *See* Memorandum, March 16, 1987, at 10–11. Since that time, however, other than documents which are demonstrably work product, defendant has produced copies of virtually all of the texts of the documents subject to plaintiffs' requests, together with the comprehensive *Vaughn* indexes, affidavits, and samples discussed in detail above. Redactions have been limited generally to names of individuals, disclosure of which would jeopardize legitimate privacy interests. Unless there is a counterbalancing

public interest in the disclosure of those names, the law requires that the courts honor the defendant's exemption privilege.

■ There is, of course, a public interest in our government's conducting itself fairly and humanely. The judiciary shares in this obligation to the extent of ensuring that the administrative process handling FOIA requests, and judicial review of those proceedings, should not be delayed. A bona fide request for the production of documents must be honored in time for that information to be useful. However, since March 16, 1987, if not theretofor, defendant has gone to great lengths to be prompt, thorough, and forthcoming to the fullest extent required by law. The courts should require no more.

Plaintiffs also addressed the question of whether there is a public interest in disclosure of the names of potential witnesses who might be able to furnish exculpatory testimony in Mr. Demjanjuk's criminal trial in Israel. Plaintiffs' Opposition to Defendant's Motion for a Protective Order at 33 (March 10, 1987). Plaintiffs contended that:

> Here, the requester's interest is substantial—Demjanjuk is on trial in a capital case and the names of witnesses who the Government found not useful in the denaturalization proceeding may provide exculpatory evidence. The public interest is virtually as great, implicating due process and fundamental fairness concerns, even though Demjanjuk is not on trial in the United States.

*Id.* (footnote omitted).

Plaintiffs' intimation that their original FOIA suit was motivated by a desire to obtain exculpatory evidence for use in current Israeli criminal proceedings against Mr. Demjanjuk has remained unelaborated in this phase of the suit. Moreover, at oral argument on August 28, 1987, counsel for plaintiffs indicated that Israeli criminal prosecutors are under an even more comprehensive disclosure obligation than that which *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 18 L.Ed.2d 215 (1963), imposes on prosecutors in the United States. *See* Transcript at 50–51.

Further, plaintiffs' interest, if any, in the names of potential witnesses (none of whom has ever testified in the various proceedings against Demjanjuk in the United States or in Israel) has been held to be a decidedly private interest. *See Lloyd and Henniger v. Marshall,* 526 F.Supp. 485, 487 (M.D.Fla.1981) ("... a party's asserted need for documents in connection with litigation will not affect, one way or the other, a determination of whether disclosure is warranted under FOIA"). The Supreme Court has indicated that FOIA is emphatically *not* designed for use as a general discovery device for purposes of civil or criminal litigation. *See United States v. Weber Aircraft Corp.,* 465 U.S. 792, 801, 104 S.Ct. 1488, 1493, 79 L.Ed.2d 814 (1984) (noting that the Supreme Court has consistently rejected a construction of FOIA that would allow it to be used to supplement civil discovery). *See also Martin v. Office of Special Counsel, MSPB,* 819 F.2d 1181, 1186 (D.C.Cir. June 5, 1987) (same). Accordingly, plaintiffs' reliance on a general public interest in access to information of alleged relevance to ongoing litigation is not supported by authority. *See Puerto Rico,* slip op. at 25, 823 F.2d at 588 (balance tips in favor of privacy interests where only "general" public interest in 'getting to the bottom' of possible official complicity in politically-inspired homicide).

There is no *public* interest in disclosure of these names that outweighs the privacy interests of the individuals whose identities are now protected. Nor does the unexplained disclosure of nine documents bearing some of the names sought by plaintiffs justify disclosure and further confirmation of their identify. *See Weisberg,* 745 F.2d at 1490–91. In *Weisberg,* the plaintiff had pieced together information about the identity of two alleged informants in the FBI investigation of the assassination of Dr. Martin Luther King, Jr. The Court found that this "in no way undermines the privacy interests of these individuals in avoiding harassment and annoyance that could result should the FBI *confirm* to Mr. Weisberg the presence of their names in the King documents." *Id.* at 1491.

In conclusion, the public interest, if any, in disclosure of the names now deleted from the documents at issue here is outweighed by the substantial privacy interests at stake for those individuals. Consequently, the identities in these documents must be exempt from disclosure under FOIA because their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

3. One document, Doc. 151, raises special concerns. Defendant released a redacted copy of that document as an attachment to its Second *Vaughn* index. Invoking Exemptions 6 and 7(C), defendant withheld the names of a prospective witness, a non-witness third party, several non-attorney OSI personnel, and an Israeli law enforcement officer. *See Vaughn* index No. 2. In withholding the name of the potential witness, defendant stated that that individual "did not ultimately testify in any of the *Demjanjuk* proceedings held in the United States." Sher Aff. ¶ 12.

Plaintiffs attach great significance to this document. They first point out that it has been misdescribed in the Sher Affidavit as "a one-page cable dated February 10, 1981 from the Government of Israel to OSI via the American Embassy in Tel Aviv and the United States Department of State in Washington, D.C." Plaintiffs' 2d Opp. at 17 (quoting Sher Aff. ¶ 12). Examination of the redacted copy of Doc. 151 reveals that the document is, in fact, a message *to* the Government of Israel *from* OSI via a cable to the American Embassy in Tel Aviv from the United States Department of State. In short, defendant mistakenly inverted the source and the recipient of the document. Defendant correctly described the *contents* of the document as a cable discussing "the proposed travel plans to the United States of a possible Israeli witness in the *Demjanjuk* denaturalization trial," Sher Aff. ¶ 12, and indicated that the witness "did not ultimately testify in any of the *Demjanjuk* proceedings held in the United States." *Id.*

Plaintiffs obtained from the Israeli prosecution an unexcised copy of a document resembling Doc. 151 and attached it as Exhibit B to Plaintiffs' Second Opposition. *See* Plaintiffs' Response to the Request of the Court for Unredacted Documents, filed August 25, 1987. The document in plaintiffs' possession disclosed, *inter alia*, the name of one Holocaust survivor, Gustav Boraks, who testified as a witness for the prosecution in the Demjanjuk criminal trial in Israel. Plaintiffs' 2d Opp. at 19.

Plaintiffs concede that they do not focus on Doc. 151 because of any intrinsic significance it might hold for the Demjanjuk defense in Israel. Plaintiffs' Response to the Request of the Court for Unredacted Documents at 4. Rather, plaintiffs argue that defendant's treatment of Doc. 151, which served as one of defendant's sample documents in phase two of this FOIA suit, "evidences a sloppiness in review of the documents and in preparation of its affidavits that thoroughly undermines its case." Plaintiffs' 2d Opp. at 19. Plaintiffs continue: "On this ground alone, we believe the Court would be warranted in ignoring the affidavits submitted by the defendant and ordering production of all the documents defendant is withholding." *Id.* at 19–20.

Plaintiffs argument is unpersuasive. First, while defendant's inversion of the document's sender and recipient in its description of Doc. 151 was an error, it is certainly not an error of such proportions as to call into question the integrity of the DOJ's entire submission in this case. Indeed, in examining and indexing the hundreds of documents at issue in this voluminous FOIA suit, defendant has exhibited considerable care and attention to detail. Second, the accuracy of defendant's description of the substantive *contents* of Doc. 151 is not in dispute. Defendant's representation that Boraks "did not ultimately testify in any of the *Demjanjuk* proceedings *held in the United States*" has not been controverted by plaintiffs. As to the fact that Boraks ultimately testified in the Demjanjuk criminal trial in *Israel*, defendant responds that it did not know who would be selected as trial witnesses by the State of Israel until a formal list of witnesses was presented to Demjanjuk and his attorneys. Einhorn Aff. ¶ 29.

Defendant invokes Exemption 7(C) to withhold the name of Gustav Boraks from Doc. 151, as well as the names of several non-attorney OSI personnel, an Israeli law enforcement officer, and a non-witness third party. *Vaughn* index No. 2. At the August 28, 1987 hearing, defendant noted that the document obtained by plaintiffs is "somewhat different in text and is completely different in typeset" from the document labelled 151 that is attached to *Vaughn* index No. 2. Transcript at 40. Defendant also stated that Doc. 151 was never disclosed by OSI or DOJ:

> To our knowledge, the document that we have in our files, a similar document to which plaintiffs have obtained, has never been released by the Office of Special Investigations voluntarily or by the Justice Department to any third parties outside the U.S. Government.

*Id.* at 39. Defendant stresses that plaintiffs offer no authority for the proposition that a person's privacy interests under Exemption 7(C) are waived for all purposes once his identity has been learned by some other means. Reply Memorandum in Support of Defendant's Second Motion for Partial Summary Judgment ("Defendant's 2d Reply") at 16–17. Indeed, *Weisberg* is authority to the contrary. *See Weisberg,* 745 F.2d at 1491. In *Weisberg,* the Court of Appeals ruled that the fact that plaintiffs were able to piece together the identities of FBI informants by relying on media reports and even disclosures by the FBI itself did not undermine the privacy interests of those individuals under Exemption 7(C). *Id.* If any public leak or disclosure were sufficient to obliterate the protection offered by Exemption 7(C), unauthorized disclosures would be encouraged and rewarded.

▆ In this case, the fact that plaintiffs have obtained a document virtually identical to defendant's Doc. 151 does not undermine the privacy interests defendant seeks to protect. Nor does the fact that Boraks testified in the Demjanjuk criminal trial in Israel foreclose withholding of his name under FOIA Exemption 7(C). *See Scherer v. Kelley,* 584 F.2d 170, 176 n. 7 (7th Cir. 1978), *cert. denied sub nom. Scherer v.*

*Webster,* 440 U.S. 964, 99 S.Ct. 1511, 59 L.Ed.2d 778 (1979). Accordingly, for the reasons stated in Section III(2) of this Memorandum, the names deleted by defendant in Doc. 151 are exempt from disclosure under 5 U.S.C. § 552(b)(7)(C).

4. Defendant has withheld the name of a foreign entity which provided information and was assured of strict confidentiality (Docs. 187, 246, and 253) and the names of other foreign agencies or authorities that provided information under an express or implied assurance of confidentiality (Docs. 221, 246, 247, 254, 283, 287, 288, and 500), invoking FOIA Exemption 7(D) (records or information compiled for law enforcement purposes, production of which "could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis"). DSMF2 ¶ 12; *Vaughn* index No. 2; *Vaughn* index No. 3. The Second Ross Declaration asserts that, in view of the violent history into which the OSI delves, the intense feelings which surround the subject matter of its investigations, and the practical necessity of a free flow of information to it, it has a practice of maintaining the confidentiality of all its foreign sources. 2d Ross Dec. ¶ 9. Plaintiffs cannot seriously challenge this policy judgment, nor should the Court in the circumstances here.

▆ The defendant has met its burden of showing that these sources provided information either under an express assurance of confidentiality or under circumstances in which an assurance of confidentiality can reasonably be inferred. Accordingly, the identity of the foreign sources in these documents are exempt from disclosure under 5 U.S.C. § 552(b)(7)(D). *See Lesar,* 636 F.2d at 490 (if source "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred ... the agency can withhold the names, addresses, and other information that would reveal the identity of a confidential source...."); *Brandt Construction Co. v. United States Environmental*

*Protection Agency*, 778 F.2d 1258, 1263–64 (7th Cir.1985).

▌ 5. In addition to withholding the identity of the foreign entity named in documents 187, 246 and 253 under Exemption 7(D), defendant has withheld certain additional information in those three documents under Exemption 7(A) (law enforcement records or information the disclosure of which "could reasonably be expected to interfere with enforcement proceedings"). Defendant has withheld this information because it is continuing to receive information from the foreign source for use in ongoing law enforcement proceedings unrelated to the Demjanjuk case, because it anticipates that the source will be useful in future law enforcement proceedings, and because it is of the view that disclosure of the identity of the source would end its usefulness in OSI's continuing law enforcement activities. DSMF2 ¶ 13; 2d Ross Dec. ¶ 10. This explanation justifies withholding the additional information. *See National Public Radio v. Bell*, 431 F.Supp. 509, 514 (D.D.C.1977) (Exemption 7(A) applies to investigation that "will hopefully lead to a '*prospective* law enforcement proceeding.' ").

▌ Defendant has also invoked Exemption 7(A) to withhold portions of Docs. 198, 212, and 223. Sher Aff. ¶ 15(e), 17(c), and 19(c). Defendant states that these deletions pertain to the identity or recollections of a person "present at one or more places of Nazi-directed persecution during World War II which are now the subject of investigation by OSI." *Id.* at ¶ 15(e). Defendant has withheld this information to avoid revealing the existence and direction of current OSI investigations and to avoid providing "potential OSI subjects with a reason and basis for interfering in those investigations (*e.g.*, intimidating witnesses; suppressing and fabricating evidence)." *Id.* This explanation justifies that withholding. *See Bevis v. Department of*

*State*, 801 F.2d 1386, 1390 (D.C.Cir.1986) (categories of information such as "the identities of possible witnesses and informants" and "reports on the location and viability of potential evidence" enable courts to assess how release of documents containing such information would interfere with law enforcement proceedings).

6. All but one of the other items withheld plainly are subject to the claim of work product exemption under 5 U.S.C. § 552(b)(5). DSMF2 ¶¶ 14–45, 46–57; *Vaughn* index No. 2; *Vaughn* index No. 3.[1] They are not materially different from the work product exemptions recognized in the Memorandum of May 15, 1987. A few days after that decision was announced, our Court of Appeals filed its opinion in *Martin v. Office of Special Counsel, MSPB*, 819 F.2d 1181 (D.C.Cir.1987), reiterating that FOIA Exemption 5 embraces the traditional work product concept established for civil court proceedings by *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and that, just as in civil discovery, factual portions of a document exempt as work product are not to be disclosed. *Martin*, 819 F.2d at 1186–1187. That decision confirms the law of this case established by the May 15 Memorandum.

Accordingly, an accompanying Order will grant defendant's second motion for partial summary judgment, except that it must disclose the budget appropriation numbers in documents 185 and 266.

## IV.

The third phase of this FOIA suit concerns two sets of documents. One set consists of those "Remaining Undifferentiated Documents" which contain any matter defined in Rule 26(b)(1) of the Federal Rules of Civil Procedure in regard to issues raised in *United States v. Demjanjuk*, 518 F.Supp. 1362 (N.D.Ohio 1981), *aff'd*, 680 F.2d 32 (6th Cir.1982), *cert. denied*, 459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602 (1982). Defendant's Third Statement of

---

1. A portion of document 274 was withheld on authority of the deliberative process privilege. However, defendant explains the withholding in DSMF2 ¶ 46 and in the Second Ross and Sher affidavits, noting that the deleted lines "reflect pretrial concerns and strategies" of an OSI attorney. Sher Aff. ¶ 21(a); 2d Ross Dec. ¶ 48. This also qualifies the document for exemption as work product.

Material Facts ("DSMF3") ¶ 8. These "Remaining Undifferentiated Documents," which are approximately 168 in number, were dated or collected by defendant between 1977 and 1986 and were prepared in anticipation of and/or arose out of the *Demjanjuk* denaturalization, deportation, or extradition proceedings. *Id.* ¶ 9. These documents include correspondence, requests for research and investigative assistance, and inter-agency memoranda prepared by DOJ attorneys working on the Demjanjuk case. They also include responses by foreign or domestic agencies to requests for information made by OSI or other DOJ attorneys. *Id.* Plaintiffs do not directly challenge the defendant's characterization of these documents. Plaintiffs' Statement of Genuine Issues ("PSGI3") ¶ 4. The 168 "Remaining Undifferentiated Documents" bear numbers ranging from 321 to 799; a specific list is attached as Exhibit A to the Fourth Affidavit of Neal M. Sher, Director of OSI ("4th Sher Aff.").

The second set of documents at issue in this third phase consists of 453 pages of "Foreign Language Documents." These documents (numbered 292g, 711–717, 727, 728, 732, and 733) are dated or were collected by defendant between 1977 and 1986. They include foreign legal decisions regarding crimes allegedly committed during World War II, foreign witness statements relating to Nazi concentration camps originally obtained by foreign officials, and Nazi war records or summaries originally maintained by foreign governments. DSMF3 ¶ 10; 4th Sher Aff. ¶ 9(b). As plaintiffs point out, the foreign materials at issue were originally created long before the United States undertook proceedings against Mr. Demjanjuk. PSGI3 ¶ 5. However, as defendant explains, the documents were "obtained and assessed by or at the direction of OSI or other Justice Department attorneys assigned to the Demjanjuk denaturalization, deportation, and/or extradition proceedings." 4th Sher Aff. ¶ 9(b). This third phase also includes Doc. 360, an intergovernmental memorandum dated March 14, 1979 from an INS investigator to a DOJ attorney concerning the investigator's interview of a potential witness in the Demjanjuk denaturalization case. 4th Sher Aff. ¶ 9(c).

Most of these documents have been released in part and withheld in part. Defendant bases its exemption claims variously on Exemption 2 (matters relating solely to an agency's internal personnel rules and practices); Exemption 5 (work product and deliberative process material involved in trial preparation and evidence evaluation); Exemption 6 (personnel and medical files and similar files whose disclosure would constitute a clearly unwarranted invasion of privacy); Exemption 7(A) (law enforcement records or information whose production could reasonably be expected to interfere with enforcement proceedings); Exemption 7(C) (law enforcement records or information whose production could reasonably be expected to constitute an unwarranted invasion of personal privacy, including the privacy of Justice Department staff, State Department staff, foreign officials, potential witnesses, individuals of investigative interest to OSI, and third parties); and Exemption 7(D) (confidential sources).

Defendant contends that these exemptions have been correctly applied to the documents in question and moves for partial summary judgment. Defendant has supported its motion with two *Vaughn* indexes which describe all of the documents at issue. *Vaughn* index No. 4, Part A, describes all the documents withheld in part, with redacted copies of each document attached as Exhibit 1. *Vaughn* index No. 4, Part B, is an index of all documents withheld in full. In addition to the *Vaughn* indexes, defendant has supported its third motion for partial summary judgment with a Fourth Sher Affidavit which analyzes in detail twelve samples of the "Remaining Undifferentiated Documents," four samples of the "Foreign Language Documents," as well as Doc. 360. In addition, defendant provides a Third Statement of Material Facts, a Memorandum of Points and Authorities, and a Declaration of L. Jeffrey Ross ("3d Ross Dec."), Chief of the FOIA unit in the Criminal Division of the Justice Department.

In opposing defendant's third motion for partial summary judgment, plaintiffs make three arguments. First, they question the factual reliability and consistency of defendant's supporting materials, including the *Vaughn* indexes and Fourth Sher Affidavit. Plaintiffs' Memorandum in Opposition to Defendant's Third Motion for Partial Summary Judgment ("Plaintiffs' 3d Opp.") at 1–10. To support their contention, plaintiffs point, *inter alia*, to a discrepancy between the *Vaughn* index and the Fourth Sher Affidavit regarding the number of pages attributed to a particular document, Doc. 548. Plaintiffs also contend that certain withheld documents were omitted from defendant's *Vaughn* indexes, and, on the other hand, that certain documents were *included* in the *Vaughn* index even though they had already been released. Defendant provides a compelling response in its Reply to Plaintiffs' Opposition to Defendant's Third Motion for Partial Summary Judgment ("Defendant's 3d Reply") and in the Third Ross Declaration. The Ross Declaration explains and corrects the minor errors identified by plaintiffs. For instance, Mr. Ross corrects the page count in Doc. 548, explaining how the unusual numbering in the original document created some initial confusion about its length. 3d Ross Dec. ¶ 2. Mr. Ross also points out that *Vaughn* index No. 4, Part B, actually includes the items that plaintiffs contend were not indexed. *Id.* at ¶ 3. Finally, Mr. Ross corrects any remaining mistakes in the *Vaughn* index by identifying additional deletions made on five documents and correcting the page count on twelve documents. *Id.* ¶¶ 6, 8. Plaintiffs' critique fails to impeach the reliability of defendant's indexing process or the factual credibility of its supporting materials.

Plaintiffs next challenge the sampling procedures used by defendant, reiterating their contention in an earlier phase (*see supra* Section II(B)) that defendant cannot "unilaterally" adopt a sampling procedure and that defendant has not provided an adequate explanation of why it concluded that its 16 sample documents in this phase are representative. Plaintiffs' 3d Opp. at 11–13. For the reasons discussed in Section II(B) of this Memorandum, plaintiffs' challenge to the sampling process must fail.

Contrary to plaintiffs' contention, defendant has provided an adequate explanation of how the representative samples were chosen. All of the "Remaining Undifferentiated Documents" and the "Foreign Language Documents" were first reviewed and categorized according to their form and content. 4th Sher Aff. ¶¶ 9(a), 9(b), 10; Defendant's 3d Reply at 2–3. Mr. Sher then selected sample documents from the "Remaining Undifferentiated Documents" and the "Foreign Language Documents" which were representative of the form and content of the documents in each of those two sets of documents. 4th Sher Aff. ¶ 10 n. 9.

Independent evaluation of *Vaughn* index No. 4, Parts A and B, and the sample documents described in the 4th Sher Affidavit, establishes that the samples are representative of the types of documents and exemptions at issue here. Furthermore, the sample documents are simply a *supplement* to the *Vaughn* indexes, which describe each document at issue, the information deleted, and the exemptions claimed. As in phase two, *see supra* Section II(A), the information submitted by defendant in this phase provides a satisfactory foundation for assessing the factual basis of the defendant's exemption claims. Consequently, contrary to plaintiffs' claim, there is no need for an independent *in camera* review of the sample documents. As *Meeropol* made clear, a "judge hearing a claim under FOIA is not obligated to conduct an *in camera* review of the documents withheld; the decision to do so is discretionary." *Meeropol*, 790 F.2d at 958. Moreover, *in camera* review should only be conducted where it is "unavoidable" because it "runs counter to the fundamental principles on which our adversary system is based." *Puerto Rico*, 823 F.2d at 588.

With respect to the particular exemption claims raised in this third phase, plaintiffs argue that defendant has failed to establish the necessary factual predicate for invoking the exemptions in "many" of the sam-

ple documents. Plaintiffs' 3d Opp. at 13–14. At the same time, however, plaintiffs have conceded, based on the Fourth Sher Affidavit, that material deleted in five of the 16 sample documents and in Doc. 360 "appears to be attorney work product" under Exemption 5. Plaintiffs' 3d Opp. at 25, 28, 31, 35, 36, 44–45. Moreover, regarding the application of Exemptions 6 and 7(C), Exemption 2, and the remaining applications of Exemption 5 in the 16 sample documents, plaintiffs have failed effectively to impeach the factual foundation presented by defendants in the Fourth Sher Affidavit. For example, in challenging defendant's excision of the name of a foreign government investigator pursuant to Exemptions 6 and 7(C) in Doc. 327, plaintiffs dispute the adequacy of the factual support offered by defendant for the claim that disclosure of the individual's name raises a real possibility that he will be subjected to retaliation or harassment. While plaintiffs concede that OSI targets have substantial privacy interests, and perhaps OSI investigators as well, Plaintiffs' 3d Opp. at 15, they do not regard the publicity and emotional tension surrounding the Demjanjuk case, nor the documented threats of physical harm or harassment directed against OSI personnel and supporters, to be an adequate factual foundation for withholding the name of this foreign investigator who assisted defendant in its investigation of Demjanjuk. *Id.* at 15–16. Defendant replies persuasively that plaintiffs are incorrectly discounting the "history of retaliation, coercion, harassment, and annoyance which has surrounded both law enforcement personnel and other individuals who assist or cooperate in OSI investigations and litigation." Defendant's 3d Reply at 3–4. The previously described examples of harassment against individuals associated with OSI, and the palpable tension surrounding the Demjanjuk case, establish the validity of the defendant's representations of the risk of potential harassment against this investigator who actively assisted defendant in its investigation of Demjanjuk. *See supra* Section III(2).

Review of the *Vaughn* indexes, the Fourth Statement of Material Facts, and the Fourth Sher Affidavit, and analysis of the law applicable to the FOIA exemptions claimed in this phase, yields the following findings and conclusions:

1. Invoking Exemption 2, defendant withheld the OSI file numbers that appear on the original of a number of documents, including Sample Docs. 344, 396, 411, 413–414, 473, 528, and 712. DSMF3 ¶¶ 14, 17–22, 24. For the reasons stated in Section III(1) of this Memorandum, these numbers on the sample documents, and on the documents of which they are representative, are exempt from disclosure under 5 U.S.C. § 552(b)(2).

2. Defendant invoked Exemptions 6 and 7(C) to protect the privacy of various individuals. In a number of documents, including Sample Docs. 327, 413, 414, and Doc. 360, defendant withheld the names of investigators and employees of investigative bodies of the United States and foreign governments. 4th Sher Aff. ¶¶ 12(a), 19(c), 20(c), and 28(a). Defendant also withheld the names of non-attorney non-supervisory personnel in OSI and other U.S. government agencies, such as the State Department. *See* Sample Docs. 350, 355, 413, 473, and 712; Fourth Sher Aff. ¶¶ 15(a), 16(b), 19(c), 21(c), 24(a). In withholding these names, defendant invoked both Exemptions 6 and 7(C). As discussed above, in Section III(2), Exemption 7(C) provides broader protection to individual privacy interests than does Exemption 6; however, 7(C) applies only to "records or information compiled for law enforcement purposes." Defendant has made a satisfactory showing that the documents at issue here were compiled for law enforcement purposes. *See* DSMF3 ¶¶ 9–10; 4th Sher Aff. ¶¶ 9(a), 9(b). All persons whose privacy interests are at stake in this phase fall into categories discussed *supra* at Section III(2) of this Memorandum. For the reasons stated there, these names on the sample documents, and on the documents of which they are representative, were properly withheld under 5 U.S.C. § 552(b)(7)(C).

3. Invoking Exemptions 6 and 7(C), defendant has also withheld the names of other categories of individuals. These in-

clude subjects of investigations by OSI other than Demjanjuk (Sample Docs. 332, 548; 4th Sher Aff. ¶¶ 13(b), 23(b)); assorted potential witnesses who did not testify in the *Demjanjuk* denaturalization proceedings (Sample Docs. 327, 355, 411, 713, 714, 715; Doc. 360; 4th Sher Aff. ¶¶ 12(c), 16(c), 18(c), 25(a), 26(a), 27, 28)); Holocaust survivors who did not testify in the *Demjanjuk* denaturalization proceedings (Sample Doc. 413; 4th Sher Aff. ¶ 19(d)); and third parties mentioned in reports (Sample Docs. 355, 714; 4th Sher Aff. ¶¶ 16(c), 26(a)). Again, the law with respect to each of these categories has been addressed, *supra*, in Section III(2). For the reasons discussed there, these names on the sample documents, and on the documents of which they are representative, were properly withheld under 5 U.S.C. § 552(b)(7)(C).

4. On authority of Exemptions 6 and 7(C), defendant has also withheld the names contained in Doc. 713, which is a 31 page German-language report prepared by investigative and prosecutorial authorities in West Germany. 4th Sher Aff. ¶ 25. This report was requested and received from West German authorities by OSI attorneys assigned to the then pending *Demjanjuk* denaturalization proceedings. *Id.; see also* Affidavit of Bruce J. Einhorn, Senior Trial Attorney, Office of Special Investigations, filed August 31, 1987 ("2d Einhorn Aff.") ¶ 4. This West German report, which is based on a review of Nazi war records, contains a list of names of German SS personnel assigned to the Nazi death camp in Sobibor, Poland during World War II and the names of German security police assigned to Lublin, Poland. 2d Einhorn Aff. ¶ 4; 4th Sher Aff. ¶ 25.

In securing this report from the West German authorities, OSI promised them that it "would attempt to protect the privacy of these names," which are protected from public disclosure under West German law. 4th Sher Aff. ¶ 25(a); 2d Einhorn Aff. ¶ 4. Defendant states that the West German authorities have informed defendant that this report has never been disclosed publicly or offered as evidence in West German court proceedings. 2d Einhorn Aff. ¶ 4. The West German authorities

also recently reiterated to OSI their position that "under no circumstances would they consent to a public release of the names" in Doc. 713. *Id.* Defendant also states that none of the persons named in Doc. 713 ever testified in any of the proceedings against Demjanjuk in the United States or in Israel. *Id.* at 3 n. 1.

■ Defendant has established that these names were properly withheld under 5 U.S.C. § 552(b)(7)(C). Defendant has made a satisfactory showing that this document meets the threshold requirement under Exemption 7: it is a record or information compiled for law enforcement purposes. As the Second Einhorn Affidavit indicates:

> Document No. 713 was prepared by West German authorities charged with the investigation and prosecution of Nazi war criminals in the FRG. Specifically, the document represents the efforts of FRG authorities to investigate possible crimes committed at the Sobibor death camp and by the security police in Lublin, and in that regard to inquire into the names and positions of German personnel active at both stations. Thus the document is both a reflection and result of West German inquiries into some of the specific sites and some of the possible perpetrators of Nazi war crimes in Poland. Moreover, Document No. 713 was requested by OSI and placed into its files because of its investigative interest in and inquiry into the operation of the Sobibor death camp.

2d Einhorn Aff. ¶ 5.

Exemption 7 applies to records compiled for both civil and criminal law enforcement purposes. *Stern*, 737 F.2d at 89. Exemption 7 applies to records compiled for foreign law enforcement purposes, *Bevis*, 801 F.2d at 1388, and to information from foreign law enforcement agency files, *Founding Church of Scientology v. Regan*, 670 F.2d 1158 (D.C.Cir.1981), *cert. denied*, 456 U.S. 976, 102 S.Ct. 2242, 72 L.Ed.2d 851 (1982). Finally, under Exemption 7, "law enforcement purposes" include "adjudicative or enforcement purposes" regardless

of whether "the adjudication or enforcement may be imminent." *Rural Housing Alliance v. United States Dept. of Agriculture,* 498 F.2d 73, 80 (D.C.Cir.1974).

Based on these precedents, Doc. 713 is, as defendant contends, an investigatory record compiled for the shared law enforcement purposes of West German authorities and OSI, namely, the identification of alleged participants in Nazi persecution and the initiation of legal action against them.

The privacy interests of the individuals named in Doc. 713 outweigh any public interest in disclosure. Individuals of investigatory interest to OSI or to West German authorities, such as the German wartime personnel mentioned in Doc. 713, have a substantial interest in maintaining their privacy. *See* the earlier discussion in this Memorandum, *supra* Section III(2). The fact that these individuals may be viewed with disdain does not deprive them of a right to privacy. Indeed, the loathsomeness of what they are suspected of doing may create a special risk of harassment and stigma if their names are disclosed. As defendant has documented, two defendants in OSI denaturalization proceedings were the subject of violent attacks, one of them fatal. 4th Sher Aff. ¶ 12(a); 2d Einhorn Aff. ¶ 7(a). Plaintiffs themselves have conceded that "persons who have been targeted by OSI have substantial privacy interests at stake." Plaintiffs' 3d Opp. at 15 n. 8. The individuals named in Doc. 713 similarly have a strong privacy interest at stake.

As defendant contends, there is a strong public interest *against* disclosing the names in Doc. 713. West German authorities have consistently refused to authorize a public release of those names, and defendant fears that their release may impair relations between German and American prosecutors and may limit the assistance and flow of information from West German authorities so vital to OSI's law enforcement activities. 2d Einforn Aff. ¶ 7(b); Defendant's Partial Response to this Court's August 7, 1987 Notice to Counsel ("Defendant's Partial Response") filed August 27, 1987, at 9–10.

Plaintiffs have not suggested a superceding public interest in disclosing the names in Doc. 713. Plaintiffs argue that there is a "public interest in obtaining the testimony of any persons who might be able to make a contribution to the pending litigation in Israel." Plaintiffs' 3d Opp. at 40. However, as discussed *supra* in Section III(2) of this Memorandum, such an interest has been held to be a decidedly *private* interest, not a public one. *See Lloyd and Henniger v. Marshall,* 526 F.Supp. 485, 487 (M.D.Fla.1981). Moreover, defendant could seek a limited release of the names in Doc. 713 from the West German authorities through the Israeli judicial system, rather than seeking a public disclosure under FOIA. *See* Defendant's Partial Response at 10–11.

The names in Doc. 713 are exempt from disclosure under 5 U.S.C. § 552(b)(7)(C). Plaintiffs have advanced no countervailing public interest in disclosure that outweighs the individual privacy interests at stake or the substantial public interest in maintaining the confidentiality of information which has been obtained under a pledge of confidentiality from a foreign government whose continued cooperation with OSI in Nazi war crimes cases is vital to OSI's ongoing law enforcement efforts.

█ 5. Defendant has withheld the names of confidential sources pursuant to Exemption 7(D) (law enforcement records or information exempt to the extent that production "could reasonably be expected to disclose the identity of a confidential source.") In Sample Doc. 355, defendant withheld the name of a former Nazi collaborator who provided information to OSI and was expressly promised confidentiality. 4th Sher Aff. ¶ 16. The defendant states that it also made an express assurance of confidentiality to the source in Doc. 626. *Vaughn* index No. 4, Part A. An assurance of confidentiality can reasonably be inferred in Doc. 334. *Vaughn* index No. 4, Part A. Accordingly, the identity of these sources was appropriately withheld under 5 U.S.C. § 552(b)(7)(D). *See Lesar,* 636 F.2d at 490 (names, addresses, and other information that would reveal identity of source

protected if source "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.") *See supra* Section III(4). Defendant's invocation of Exemption 7(D) with respect to documents 777–791 will be discussed *infra* in Section VI(5) of this Memorandum in connection with the fifth phase of this FOIA suit.

■■■ 6. Defendant has withheld information in Docs. 334, 413, and 626 pursuant to Exemption 7(A) (law enforcement records or information the disclosure of which "could reasonably be expected to interfere with enforcement proceedings.") *Vaughn* index No. 4, Part A. The government has met its burden of showing that release of background information in Sample Doc. 413 regarding Holocaust survivors who are potential witnesses in future OSI litigation could reasonably be expected to interfere with enforcement proceedings. As the Fourth Sher Affidavit states, release of this information could alert OSI targets to the direction of OSI's current investigations, could inhibit other Holocaust survivors from providing information, and could impede OSI's ongoing and future litigation. *Id.* ¶ 19(e). In Docs. 334 and 626, the name is withheld of a confidential source who is providing information in an ongoing OSI investigation. *Vaughn* index No. 4, Part A. This explanation of defendant's withholding of information in these documents under Exemption 7(A) is sufficient to justify that withholding. *See supra* Section III(5) of this Memorandum.

■■■ 7. The remaining items withheld from disclosure by defendant clearly fall under the work product exemption. 5 U.S.C. § 552(b)(5). They are not materially different from the work product exemptions recognized in the Memorandum of May 15, 1987. The material withheld includes documents compiling and evaluating

evidence for OSI and INS (Sample Docs. 327, 355, 360, 413, 528, 548; 4th Sher Aff. ¶¶ 12(b), 16(a), 19(b), 22(a), 23(a), 28(c)); documents containing legal research and opinions or other pre-trial impressions of the U.S. litigation involving Mr. Demjanjuk (Sample Docs. 344, 411; 4th Sher Aff. ¶¶ 14(b), 18(b)); and documents containing directions for investigators, which make reference to evidence and discuss questions and requests for information (Docs. 332, 414, 473; 4th Sher Aff. ¶¶ 13(a), 20(b), 21(b)).[2] For the reasons discussed in the Memorandum of May 15, 1987 and in section III(6) of this Memorandum, Exemption 5 was properly applied to these sample documents, and to the documents of which they are representative.

8. Finally, defendant has withheld information from Doc. 360 pursuant to Exemptions 5, 6, and 7(C). DSMF3 ¶ 28; Fourth Sher Aff. ¶ 28. These withholdings in Doc. 360 have already been discussed and sustained in sections IV(2), IV(3) and IV(7) above.

Accordingly, an accompanying Order will grant defendant's third motion for partial summary judgment.

### V.

In the fourth phase of this FOIA suit, plaintiffs seek access to ninety-six documents prepared between 1975 and 1980 by defendant in anticipation of or during the course of litigation surrounding the Demjanjuk denaturalization proceedings. Defendant's Fourth Statement of Material Facts ("DSMF4") ¶ 8. These documents include correspondence among DOJ attorneys and investigators; intra-governmental memoranda of DOJ attorneys, historians, and investigators; requests by DOJ personnel for assistance or research; administrative reports regarding DOJ personnel assignment; and reports of investigation ("ROIs") prepared by Immigration and

---

**2.** Defendant invokes the deliberative process privilege for withholding portions of Docs. 327, 332, and 411, and invokes both the work product privilege and the deliberative process privilege for Docs. 413 and 473. However, defendant explains the withholding in the Fourth Sher Affidavit, noting that these documents involve the "pretrial litigative impressions" of Justice Department attorneys and their agency superiors "including their opinions and subjective summaries of potential evidence and legal issues" in the Demjanjuk proceedings. 4th Sher Aff. ¶ 12(d). This qualifies the documents for exemption as work product.

Naturalization Service ("INS") agents for use by INS attorneys assigned to the Demjanjuk denaturalization case. *Id.;* Fifth Affidavit of Neal M. Sher ("5th Sher Aff.") ¶ 9. Plaintiffs do not controvert this characterization of the documents at issue. Plaintiffs' Fourth Statement of Genuine Issues ("PSGI4") ¶ 4. For purposes of the present litigation, this collection of documents has been designated the "Original Release (Undifferentiated)" materials. DSMF4 ¶ 8.

Thirty-two of these documents were released to Demjanjuk's attorneys in unredacted form by the INS in August of 1986. Supplemental Declaration of L. Jeffrey Ross ("Supp. Ross Dec.") ¶ 4. Among those released were all the ROIs included in the 96 documents at issue in this phase. Neither the OSI, the DOJ Freedom of Information/Privacy Act (FOI/PA) Unit, nor the United States Attorney learned of the INS release until the defendant had processed all 96 documents in December, 1986 following plaintiffs' FOIA request. In May, 1987, defendant released to plaintiffs unredacted copies of the 32 documents, which were numbered as follows: 10, 11, 13–17, 19, 20, 23–26, 28, 29, 31–38, 40–42, 44–47, 77, and 78. Supp. Ross Dec. ¶ 4.[3]

Defendant resists full disclosure of the remaining 63 documents. Thirteen are withheld altogether and the rest are offered to plaintiffs only in redacted form. The DOJ claims that all deletions and withholdings are justified by various subsections of 5 U.S.C. § 552(b). Defendant's Fourth Motion for Partial Summary Judgment ("Defendant's 4th Motion") at 3–4. In particular, defendant invokes Exemption 2 (information relating solely to agency's internal rules and practices); Exemption 5 (work product and deliberative process material generated for trial preparation and evidence evaluation); Exemption 6 (personnel and medical files, and the like, disclo-

sure of which would constitute a clearly unwarranted invasion of personal privacy); and Exemption 7(C) (information reasonably expected to threaten invasion of personal privacy). *Id.*

Defendant maintains that all deletions from the 63 documents are authorized by these Exemptions and moves for partial summary judgment with respect to those documents. In support of its motion, defendant has submitted a *Vaughn* index which catalogues each of the 96 documents according to content, describes the deletions made in each one, and indicates the FOIA exemption under which each deletion falls. Copies of all documents redacted in part have been attached to this index. Defendant has further supplemented its *Vaughn* index with the fifth comprehensive affidavit of Neal M. Sher, Director of OSI, which analyzes in particular detail a six-document sample that defendant claims to be representative of the 63 "Original Release (Undifferentiated)" materials. The sample includes Docs. No. 12, 21, 22, 67, 72, and 94. 5th Sher Aff. ¶¶ 15–20. In addition, defendant has submitted a Fourth Statement of Material Facts, ("DSMF4"), again addressing the nature of the documents at issue in this phase and the deletions made pursuant to the FOIA exemptions. As does the Fifth Sher Affidavit, the DSMF4 focuses on the six sample documents as representative of all 63 in terms of content, deletion, and relevant FOIA exemption.

Plaintiffs oppose defendant's Fourth Motion for Partial Summary Judgment on four grounds. First, they point to what they perceive to be a pervasive carelessness in defendant's pleadings and supporting materials. *See* Plaintiffs' Memorandum in Opposition to Defendant's Fourth Motion for Partial Summary Judgment ("Plaintiffs' 4th Opp.") at 1–2. Plaintiffs note, in this regard, that the Fifth Sher

---

**3.** Plaintiffs dispute defendants' claim that it released these 32 documents in May, 1987. Plaintiffs' Fourth Statement of Genuine Issues ("PSGI4") ¶ 5. Plaintiffs do not, however, dispute defendant's claim that the INS released copies of those same documents to attorneys for Demjanjuk in August of 1986. PSGI4 ¶¶ 8–9.

The Order accompanying this Memorandum directs defendant to ascertain whether the 32 documents were in fact released to plaintiffs in May, 1987, and, if they have not been released, to produce a complete set of these copies for plaintiffs within seven days of the date on which the Order is filed.

Affidavit contains repeated references to the *69* documents at issue in this phase when in fact only *63* documents have been withheld in whole or in part; plaintiffs correctly count only 63 documents listed in defendant's *Vaughn* index. Plaintiffs' 4th Opp. at 1. Similarly, plaintiffs observe a discrepancy between the Sher Affidavit, which states that *33* of the original 96 documents were previously released by the INS to Demjanjuk attorneys, and the Supplemental Declaration of L. Jeffrey Ross, Chief of the FOIA/PA Office of Enforcement Operations, which notes that *32* documents had been released in full. *Id.* at 2 n. 1. Plaintiffs conclude that these inconsistencies raise such doubts about defendant's reliability that its representations concerning all other matters in this action should be considered suspect. *Id.* at 2.

For the reasons stated above, in Section II(A), plaintiffs' challenge to defendant's credibility must be rejected. Defendant has established satisfactorily that the pleadings and supporting materials it has filed are good faith statements of facts as defendant knows and understands them to exist. Given the volume of documents involved in this action as a whole and the complex issues involved in each of these four phases, the errors plaintiffs point out, while certainly not commendable, do not establish such carelessness or disregard of detail that would compromise the integrity of defendant's submissions to the extent of requiring or justifying the *in camera* inspection of documents that plaintiffs demand. *See* Plaintiffs' 4th Opp. at 4–5. Plaintiffs have failed to establish the bad faith on defendant's part that would rebut the presumption that affidavits and pleadings, filed under penalty of perjury and the strictures of Rule 11 of the Federal Rule of Civil Procedure, are reliable sources of information for resolution of the issues here.

Second, plaintiffs challenge the adequacy of defendant's *Vaughn* index. They claim that the index's descriptions of redacted documents are "skeletal," Plaintiffs' 4th Opp. at 1, and that they fail to provide "insight as to the contents of the excised portions," *id.* at 9. Plaintiffs assert that defendant's "vague" and "conclusory"

*Vaughn* descriptions fail to establish a factual predicate for the FOIA exemptions claimed. *Id.* Plaintiffs thus argue that the index cannot serve as an adequate factual basis for summary judgment. *Id.* at 19.

For the reasons stated above, in Section II(A), this argument must fail. Defendant's fifth *Vaughn* index, like its second, third, and fourth indexes, suffices as a factual basis for evaluation of the exemptions claimed.

 Third, plaintiffs again challenge the sampling technique employed by defendant in explaining its application of the FOIA exemptions to the 96 documents at issue. At the threshold of their argument, plaintiffs contend that, while reliance on a representative sample may be necessary in deciding those FOIA actions involving a "voluminous number of documents," *id.* at 4, sampling is inappropriate in the present phase of this litigation because only 63 documents are in question, *id.* at 3. Plaintiffs maintain that defendant should be forced to prepare, and this Court to review, a detailed affidavit for each of these 63 documents. *Id.* at 5. Plaintiffs, however, fail to address this issue in the context of the *Nishnic* litigation as a whole. The 63 documents with which this fourth phase is concerned represent only a fraction of the total number of documents that plaintiffs seek from defendant. It was for suits of this magnitude that the sampling procedure was devised. *See Meeropol,* 790 F.2d at 958 (sampling appropriate where not realistic for Court to review each and every document).

Plaintiffs argue, further, that even if the volume of documents at issue in this phase does warrant a sampling approach, that method has been improperly implemented by defendant. *See* Plaintiffs' 4th Opp. at 3. Specifically, plaintiffs again dispute the legitimacy of a sample selected "unilaterally" by the defendant without the consent of the FOIA requester, *id.* at 3–4, and without judicial oversight, *id.* at 5. Plaintiffs maintain, moreover, that not only has defendant arrogated an unchecked authority to select

the samples it will describe in detail, but it has also failed to provide any explanation to support the conclusion that the six samples are in fact "representative." *Id.* at 5. Accordingly, plaintiffs insist upon an independent *in camera* inspection of a representative sample of withheld documents to verify "the factual basis and bona fides of the agency's claim of exemption." *Id.* at 4, citing, *inter alia, Ash Grove Cement Co. v. FTC,* 511 F.2d 815, 817 (D.C.Cir.1975). Yet, as *Puerto Rico* made clear, *in camera* review should only be conducted where it is "unavoidable" because it "runs counter to the fundamental principles on which our adversary system is based." *Puerto Rico,* 823 F.2d at 558.

Plaintiffs' challenge to defendant's sampling approach in phase four must fail. As defendant points out in its Reply to Plaintiffs' Opposition to Defendant's Fourth Motion for Partial Summary Judgment ("Defendant's 4th Reply") at 1–2, the Fifth Sher Affidavit establishes the two criteria upon which the six samples were selected. The samples are

 a) representative of the form and content of all [63] documents ...; and

 b) representative of the various kinds of deletions from disclosure made by defendant in those same documents.

5th Sher Aff. ¶ 13(a)–(b). An independent evaluation of the 5th *Vaughn* index and comparison of that catalogue to the sample documents analyzed in the 5th Sher Affidavit compels a finding that the samples are in fact representative of the 63 "Original Release (Undifferentiated)" documents.

Further, for reasons set out above, in Section II(B) of this Memorandum, the sampling method as implemented by defendant in phase four satisfies the legal standard governing sampling procedures in large FOIA suits such as this one. As was true in every other phase, defendant's fourth *Vaughn* index describes every document at issue here and explains the factu-

al basis for each exemption claimed. Defendant's more detailed analysis of the six representative samples thus supplements an already comprehensive catalogue of the 63 documents; consequently, these samples provide an appropriate focus for evaluation of defendant's claimed exemptions. *See supra* Section II(B) for analysis and approval of sampling in this case.

Fourth, plaintiffs argue that neither the *Vaughn* index nor the Fifth Sher Affidavit establishes the necessary factual predicate to support "many" of defendant's claims under FOIA Exemptions 2, 5, 6, and 7(C). Plaintiffs' 4th Opp. at 9. Plaintiffs' claim is vague. They rely exclusively on a generalized challenge to the factual sufficiency of the *Vaughn* index's document-by-document analysis of the claimed exemptions. *See id.* at 9–10. For the reasons explained above, in Section II(A), plaintiffs' argument must again be rejected. Defendant's *Vaughn* index satisfies the standards of specificity established in *Puerto Rico.*

With respect to the six detailed analyses, plaintiffs' challenge is somewhat more specific. They argue that the Fifth Sher Affidavit substitutes Mr. Sher's "speculations and surmises" for facts that would justify the application of the exemptions to the samples. *Id.* at 10. Plaintiffs contend that, consequently, "most" of the samples lack any factual foundation for defendant's asserted exemptions. *Id.* For the reasons elaborated above, in Section II, this claim is groundless; it must be rejected.

Plaintiffs contend, additionally, that the facts that are revealed by defendant in the six sample analyses do not establish a foundation for application of the FOIA exemptions.[4] Plaintiffs' 4th Opp. at 10–19. This argument moves beyond the question of whether defendant has submitted a sufficient volume of facts to evaluate the exemptions claimed. Plaintiffs' challenge raises the question whether the facts that

---

4. Although plaintiffs make a general argument that defendant has failed to support its withholding under Exemptions 2, 5, 6, and 7(C), Plaintiffs' 4th Opp. at 9, plaintiffs do not challenge the applicability of Exemption 2 in either sample document for which that exemption is

claimed. *See* Plaintiffs' 4th Opp. at 10–19; Defendant's 4th Reply at 9 (discussing Doc. 12); *id.* at 12 (discussing Doc. 22). Accordingly, Exemption 2 is not at issue in phase four and is not addressed in the following discussion.

*are* revealed within each of the six analyses justify defendant's invocation of the several FOIA exemptions in these samples and, since they are representative, in all 63 documents at issue. Upon consideration of the *Vaughn* index, the Fifth Sher Affidavit, memoranda from both parties regarding defendant's Fourth Motion for Partial Summary Judgment, and the applicable law, an accompanying Order will grant defendant's fourth motion for summary judgment with respect to all 63 "Original Release (Undifferentiated)" documents for the following reasons:

1. Defendant invokes Exemption 5 as authority for withholding Sample Doc. 94 in its entirety.[5] The Sher Affidavit describes this document as a two-page memorandum, dated August 21, 1978, from the Attorney–Director of the INS Special Litigation Unit, a participant in the then pending *Demjanjuk* denaturalization action, to his superior, the General Counsel of the INS. 5th Sher Aff. ¶ 20. The memorandum purportedly discusses proposed pretrial litigative strategies and division of attorney labor for the denaturalization case. *Id.* Defendant contends that this document reflects and reveals the deliberative processes of the two INS officials named and that it refers to various policies and rationales that were later discarded. Defendant concludes that Sample Doc. 94 qualifies for the deliberative process privilege under Exemption 5 because 1) the memorandum is "predecisional," that is, generated *before* the adoption of the DOJ's policy of delegating to OSI authority to direct all Nazi war crimes cases, including *Demjanjuk*, Defendant's 4th Reply at 14 (citing *Puerto Rico*, 823 F.2d at 585); and 2) the memorandum is "deliberative," that is, "reflect[ing] the give-and-take of the consultative process" between an INS at-

torney and his superior, *id.* at 14–15 (citing *Puerto Rico*, 823 F.2d at 585). Defendant's description establishes that Doc. No. 94 contains deliberative process information privileged from release by Exemption 5.

Defendant describes the material withheld in Doc. 94 as a "frank predecisional discussion of proposed litigative policies by an attorney for consideration by his agency superior." 5th Sher. Aff. ¶ 20(a). Defendant explains that this material consists of attorneys' pretrial litigative concerns, opinions, and proposed strategies. DSMF4 ¶ 18. Accordingly, the deleted information also qualifies for attorney work product exemption.

Plaintiffs argue that, even if the deleted material in Doc. 94 would otherwise fall under Exemption 5, defendant has waived its privilege under that exemption and cannot now withhold the information. Plaintiffs' 4th Opp. at 6–7. Plaintiffs allege, in this regard, that the INS "disclosed" a large volume of documents to an attorney for Mr. Demjanjuk. *Id.* at 6. Admitting that defendant subsequently released to plaintiffs all documents of which that attorney had obtained copies, plaintiffs yet contend that defendant's privilege has been waived with respect to all documents *reviewed* by that attorney, whether copied or not. *Id.* at 6–7. Plaintiffs' contend that many more documents must therefore be disclosed by defendant. *Id.*

The issue of waiver of the work product privilege was disposed of in the Memorandum of May 15, 1987, granting partial summary judgment in favor of defendant in phase one of this litigation. *See Nishnic*, mem. op. at 9–10. As was the case in that phase, plaintiffs in phase four do not suggest that the documents at issue

---

5. Defendant has also relied on Exemption 5 to withhold Sample Doc. 67 in its entirety. 5th Sher Aff. ¶ 18(a). That document is described as a one-page memorandum from a DOJ attorney to the Attorney–Director of the INS Special Litigation Unit. *Id.* ¶ 18. Defendant claims that the memorandum discusses potential government witnesses in the then pending Demjanjuk denaturalization case and possible methods by which they could be contacted. *Id.* In addi-

tion, the memorandum purportedly contains the pretrial litigative impressions of the DOJ attorney. *Id.* ¶ 18(a)(2). Plaintiffs concede that Doc. 67 constitutes attorney work product and is therefore exempt from disclosure under Exemption 5. Plaintiffs' 4th Opp. at 16. Plaintiffs apparently are satisfied with the volume, specificity, and credibility of the facts defendant has advanced to justify its withholding of Doc. 67.

among the "Original Release (Undifferentiated)" materials were among those allegedly reviewed by Mr. Demjanjuk's attorney. It remains true that "[t]he fact that other OSI or INS documents have been released [or, in this case, reviewed] does not support an inference that defendant has waived its work product privilege with respect to the documents at issue here." *Id.* at 9. Plaintiffs similarly have failed to establish that defendant's privilege has been waived for the documents at issue in phase four.

Plaintiffs contend, further, that even if some part of Doc. 94 consists of material privileged under Exemption 5, defendant has not established that that document consists entirely of privileged material. Plaintiffs argue that all "purely factual" material must be segregated from privileged deliberative material and released. Plaintiffs' 4th Opp. at 18. Plaintiffs thus again advance the segregability theory of Exemption 5 previously rejected in the Memorandum of May 15, 1987. *See Nishnic,* mem. op. at 2–9. That Memorandum's conclusion was reiterated in *Martin,* discussed *supra* at Section III(6), in which the Court of Appeals ruled that FOIA Exemption 5 "incorporat[es] all civil discovery rules." *Martin,* 819 F.2d at 1185. The Court ruled that, since the work product privilege does not distinguish between factual and deliberative material in a protected document, *id.* at 11, 819 F.2d at 1186. Exemption 5 would also privilege information in that document "regardless of [its] status as 'factual' or 'deliberative,' " *id.* at 12, 819 F.2d at 1187. Plaintiffs' demand that defendant release all purely factual information contained in Doc. 94, and in all documents of which No. 94 is representative, must again be rejected. Doc. 94 falls within the work product privilege under Exemption 5 and need not be produced either in part or in full.

2. Defendant invokes Exemptions 6 and 7(C) to justify redactions in all five of the remaining samples: Docs. 12, 21, 22, 67, and 72. These two exemptions protect personal privacy interests from unwarranted invasion. A thorough analysis of these exemptions appears above in Section III(2)

and applies with equal force to the privacy issues raised in this phase. Plaintiffs do not contest defendant's characterization of all 63 "Original Release (Undifferentiated)" documents as being linked to law enforcement activities surrounding the Demjanjuk proceedings conducted in the United States. Thus, the threshold requirement of Exemption 7(C) is again satisfied. *See* DSMF4 ¶ 8; PSGI4 ¶ 4. Neither party, in addition, differentiates its analysis of the privacy issue here as between Exemption 6 or 7(C) claims. Accordingly, all privacy-based deletions may be evaluated in terms of Exemption 7(C) alone.

Defendant's redactions in the remaining samples are based upon the privacy interests of four categories of persons. In Docs. 12, 21, and 22, defendant has withheld the names of INS investigators none of whom has testified during any proceeding involving Mr. Demjanjuk's denaturalization in the United States or his criminal trial in Israel. 5th Sher Aff. ¶¶ 15(b), 16(c), & 17(b). In Doc. 21, defendant has deleted the name of an Israeli police investigator who, again, has never testified in a Demjanjuk proceeding. 5th Sher Aff. ¶ 16(a). Also in Doc. 21, defendant has withheld the names of five other subjects of INS investigations. Unlike Demjanjuk, none of these five has been the subject of actual legal proceedings initiated by INS or OSI. 5th Sher Aff. ¶ 16(b). Finally, in Docs. 67 and 72, defendant has deleted the names of potential witnesses, who have never testified in any Demjanjuk proceeding in the United States or Israel. 5th Sher Aff. ¶¶ 18(b) & 19(a).

Defendant contends that persons embraced within all four categories possess a personal privacy interest recognized by Exemption 7(C). Defendant maintains that disclosure of any of the redacted names would expose that individual and his or her family to risks of retaliation, coercion, harassment, and annoyance. DSMF4 at ¶ 13(b); 5th Sher Aff. ¶ 15(b). Defendant emphasizes the extremely public character of the Demjanjuk denaturalization, extradition, and criminal proceedings; it notes that all proceedings have taken place in an

atmosphere charged with much emotional tension. DSMF4 at ¶ 13(b); 5th Sher Aff. ¶ 15(b), at 11.

Plaintiffs challenge defendant's claim that all categories of persons identified in the sample documents possess a personal privacy interest recognized under Exemption 7(C), although they do concede that subjects of OSI investigations possess such an interest if they are alive and if no prosecution has in fact been initiated. Plaintiffs' 4th Opp. at 16. Whether persons in each of these same categories possess a cognizable personal privacy interest was an issue raised in phase two of this action. For the reasons stated above, in Section III(2), all categories at issue in phase four are embraced within the protections of Exemption 7(C).

Defendant contends that disclosure of the identities of these persons would result in an invasion of recognized personal privacy interests. 5th Sher Aff. ¶ 15(b). In opposition, Plaintiffs make substantially the same argument that they offered in phase two. Again, plaintiffs' argument rests on their view that a general atmosphere of tension and a catalogue of threatening incidents cannot, without more, establish that any given individual's privacy interests are at risk. Plaintiffs' 4th Opp. at 11–12, 14–15. Plaintiffs claim that defendant must prove a similarity in circumstance between the individuals involved in the several incidents and each individual whose identity defendant seeks to withhold under Exemption 7(C). *Id.* at 11.

Plaintiffs' challenge on these grounds is no different from that which they advanced in the second phase of this litigation. Consequently, the same legal analysis applied to reject plaintiffs' arguments there compels rejection of their argument here. *See supra* Section III(2). The broad range of individuals protected, from a similarly broad variety of "invasions" of privacy under Exemption 7(C) compels the conclusion that defendant has carried its burden of proving that legitimate and substantial personal privacy interests would be threatened by recognized "invasions" upon disclosure of the identities now deleted from the sample documents. Plaintiffs' argument to the contrary must again be rejected.

Since the individuals at issue possess personal privacy interests of the sort contemplated by Exemption 7(C), and since disclosure of their identities would result in the kind of "invasion" of that interest that 7(C) was designed to prevent, there remains for consideration the question of whether such an invasion would be "unwarranted." 5 U.S.C. § 552(b)(7)(C). Exemption 7(C) requires a balancing of the interest in personal privacy against the public interest in disclosure. *Puerto Rico,* 823 F.2d at 587. Plaintiffs contend that in this phase the defendant has unilaterally substituted Mr. Sher's "opinion" about the relative weight of interests for the balancing required under 7(C). *See* Plaintiffs' 4th Opp. at 12–13. They argue, further, that defendant has failed to provide the information necessary for the Court to perform the balance on its own. *Id.* at 13. Plaintiffs again make claims similar to those that they advanced in phase two of this litigation; again, they are mistaken. For the reasons discussed above, in Section III(2), defendant in this phase as well has established that recognized personal privacy rights of persons embraced by 7(C) would be threatened upon disclosure of the identities now redacted in the sample documents. Plaintiffs have again failed to establish a countervailing public interest in disclosure that would require tipping of the balance away from the protection of these substantial privacy interests.

Plaintiffs have, in this regard, presented little more than a generalized "public interest in obtaining the evidence of persons knowledgable about matters currently in litigation.... [and] in ensuring that all relevant facts are brought forth ... particularly ... in criminal cases." Plaintiffs' 4th Opp. at 12–13. As discussed above, plaintiffs have failed throughout this litigation to elaborate a specific public interest in disclosure that is cognizable under Exemption 7(C). Moreover, any general "public interest" in disclosure of the names now deleted from Sample Docs. 12, 21, 22, 67, and 72 is outweighed by the substantial privacy interests at stake to those individu-

als. Consequently, the identities in these documents, and in all of the "Original Release (Undifferentiated)" materials of which these are representative, must be exempt from disclosure under FOIA because their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

Accordingly, an accompanying Order grants defendant's fourth motion for partial summary judgment.

## VI.

The fifth and final phase of this FOIA suit concerns those documents derived from among the 581 pages of "Remaining Undifferentiated Documents" which were not previously addressed in Defendant's Third Motion for Partial Summary Judgment, filed on June 2, 1987. The documents include correspondence between DOJ attorneys and defense counsel involved in the *Demjanjuk* denaturalization, deportation, and/or extradition proceedings; correspondence between DOJ attorneys and judicial officers, such as letters to the immigration judge presiding over the *Demjanjuk* deportation proceedings; and intra-governmental memoranda and correspondence between DOJ attorneys and/or other DOJ employees working on the *Demjanjuk* case. Defendant's Fifth Statement of Material Facts ("DSMF5") ¶ 9; Sixth Affidavit of Neal M. Sher ("6th Sher Aff.") ¶ 10. The documents were dated and/or acquired by DOJ between 1977 and 1986, and were prepared in anticipation of and/or arose out of the *Demjanjuk* denaturalization, deportation and/or extradition proceedings. DSMF5 ¶ 5; 6th Sher Aff. ¶ 10. The documents were included in *Vaughn* index No. 4, Parts A and B, filed with Defendant's Third Motion for Partial Summary Judgment. In addition, for the reasons discussed *infra,* Docs. 777–791 will also be discussed in this phase. These documents are the summaries of interviews of Soviet citizens conducted by Soviet officials inside the Soviet Union in 1979 at the request of DOJ or INS attorneys assigned to the then pending *Demjanjuk* denaturalization case. Defendant's Reply to

Plaintiff's Opposition to Defendant's Fifth Motion for Partial Summary Judgment ("Defendant's 5th Reply") at 7; Defendant's Response to Plaintiff's Supplemental Memorandum in Opposition of Defendant's Fifth Motion for Partial Summary Judgment ("Defendant's Response to Plaintiff's Supp. Mem.") at 7–8.

Some of the documents in this phase have been released in part; others have been withheld in full. *See Vaughn* index No. 4, Parts A and B. Defendant bases its exemption claims variously on Exemption 2 (matters relating solely to an agency's personnel rules and practices); Exemption 5 (work product and deliberative process material involved in trial preparation and evidence evaluation); Exemption 6 (personnel and medical files and similar files whose disclosure would constitute a clearly unwarranted invasion of privacy); Exemption 7(A) (law enforcement records or information whose production could reasonably be expected to interfere with enforcement proceedings); Exemption 7(C) (law enforcement records or information whose production could reasonably be expected to constitute an unwarranted invasion of personal privacy); and Exemption 7(D) (confidential sources).

Defendant contends that these exemptions have been correctly applied to the documents in question and moves for partial summary judgment. Defendant has supported its motion with two *Vaughn* indexes which describe the individual documents at issue. *Vaughn* index No. 4, Part A describes the documents withheld in part (both in this phase as well as in phase three), with redacted copies of each document attached as Exhibit 1. *Vaughn* index No. 4, Part B is an index of all documents withheld in full (in this phase as well as in phase three). In addition to the *Vaughn* indexes, defendant has supported its fifth motion for partial summary judgment with a Sixth Sher Affidavit which analyzes nine representative samples of the "Remaining Undifferentiated Documents" at issue. Defendant also provides a Fifth Statement of Material Facts, and a Memorandum of Points and Authorities.

In opposing defendant's fifth motion for partial summary judgment, plaintiffs challenge the sampling procedures used by defendant, reiterating their contention in earlier phases (*see supra* Section II(B)) that defendant cannot "unilaterally" adopt a sampling procedure and that defendant has not provided an adequate explanation of why it concluded that its nine sample documents are representative. *See* Plaintiffs' Memorandum in Opposition to Defendant's Fifth Motion for Partial Summary Judgment ("Plaintiffs' 5th Opp.") at 2–4. For the reasons discussed in Section II(B) of this Memorandum, plaintiffs' challenge to the sampling process must fail. There is ample support for the use of sampling in voluminous FOIA cases. Furthermore, defendant has filed *Vaughn* indexes describing each document at issue and itemizing each exemption claimed. Defendant's nine sample documents, discussed in detail in the Sixth Sher Affidavit, are thus simply a supplement to the full list of documents described in defendant's *Vaughn* indexes.

Contrary to plaintiffs' contention, defendant has provided an adequate explanation of how the representative samples were chosen. All of the "Remaining Undifferentiated Documents" at issue in this phase were first reviewed by Mr. Sher. 6th Sher Aff. ¶ 13. Mr. Sher then selected sample documents which were representative of the form and content of the documents at issue and representative of the various kinds of FOIA exemptions claimed. *Id.*

Plaintiffs next contend that defendant has failed to include among its sample documents examples of the most important categories of documents and exemptions claimed in this phase. Plaintiffs' 5th Opp. at 4–9. Plaintiffs refer specifically to Docs. 777–791 which are a collection of records of interviews of witnesses and photo identifications that took place in certain Russian cities in 1979. *Id.* at 6. Plaintiffs contend that these documents do not fit into the categories set forth by defendant in this phase, and that defendant has not discussed in the Sixth Sher Affidavit or the Defendant's Fifth Memorandum the basis for invoking Exemption 7(D) to withhold

these documents. *Id.* at 6–8. The government responds that these documents were briefed in the third phase of this litigation. Defendant's 5th Reply at 5–8. Indeed, plaintiffs themselves discussed these documents in their Memorandum in Opposition to Defendant's Third Motion for Partial Summary Judgment at 7–9. Moreover, in the Declaration of L. Jeffrey Ross attached to Defendant's Third Reply ("3d Ross Dec."), defendant responded to plaintiff's opposition by clarifying that it was relying on the attorney work product privilege under Exemption 5 to withhold Docs. 777–791 in full, not Exemption 7(D), and that *Vaughn* index No. 4, Part B, should be so amended. 3d Ross Dec. ¶ 4, at 3.

Having discussed documents 777–791 in phase three of this litigation, plaintiffs cannot now fault the defendant for not including them among its samples in phase five of this suit. Moreover, defendant clarified in the Third Ross Declaration that it was not invoking Exemption 7(D) to withhold the documents in their entirety, but was relying rather on Exemption 5 and also on Exemptions 6 and 7(C). *Id.* Since the pleadings were filed in phase three, however, further pleadings pertaining to Docs. 777–791 have been filed by both sides and a hearing has been held in which these documents were discussed. In order to take advantage of the additional information and arguments presented by both sides, Docs. 777–791 will be discussed in this fifth and final phase of this voluminous FOIA suit.

Independent evaluation of *Vaughn* index No. 4, Parts A and B, and the sample documents described in the Sixth Sher Affidavit, establishes that the samples are representative of the types of documents and exemptions at issue here. Furthermore, the sample documents are simply a *supplement* to the *Vaughn* indexes which describe each document at issue, the information deleted, and the exemption claimed. Moreover, Defendant's 5th Reply, Defendant's Supplemental Response to Issues Raised By This Court at its August 28, 1987 Hearing ("Defendant's Supp. Response"), and Defendant's Response to

Plaintiffs' Supp. Mem. provide additional information and justification for the FOIA exemptions claimed. The composite of information submitted by defendant thus provides a satisfactory basis for assessing the factual foundation of defendant's exemption claims. Consequently, there is no need for an independent *in camera* review of the documents at issue.

With respect to particular exemption claims raised in this fifth phase, review of the *Vaughn* indexes, the Fifth Statement of Material Facts, and the Sixth Sher Affidavit, and analysis of the applicable law, yields the following findings and conclusions:

1. Invoking Exemption 2, defendant has withheld the OSI file numbers that appear on the original of a number of documents, including Sample Docs. 595, 596, 607, 609, and 619. DSMF5 ¶¶ 14(a), 15(a), 18(a), 19(a), and 20(a). For the reasons stated in Section III(1) of this Memorandum, these numbers on the sample documents, and on the documents of which they are representative, are exempt from disclosure under 5 U.S.C. § 552(b)(2). The file numbers originally withheld on Sample Docs. 601, 603, and 643, which are letters from a DOJ attorney to immigration judges, have now been released by defendant following defendant's determination that those documents were open to public inspection in the records of the Justice Department's Executive Office for Immigration Review ("EOIR"). Defendant's Supp. Response at 3. Those documents were released in full by defendant on August 31, 1987, except for the name of one non-attorney, non-supervisory DOJ employee which was not contained in the public records of EOIR. *Id.* at 4 and Exhibits D, E, and F.

■ 2. Defendant invoked Exemptions 6 and 7(C) to protect the privacy of various individuals. In Sample Docs. 601, 603, 607, 609, and 619, defendant withheld the names of OSI non-attorney, non-supervisory employees. DSMF5 ¶¶ 16(b), 17(b), 18(c), 19(b), 20(a); 6th Sher Aff. ¶¶ 17(b), 18(b), 19(c), 20(b), 21(a). In Sample Doc. 609, defendant withheld the names of several INS investigators. DSMF5 ¶ 19(b); 6th

Sher Aff. ¶ 20(b). In withholding these names, defendant invoked both Exemptions 6 and 7(C). Exemption 7(C) provides broader protection to individual privacy interests than Exemption 6, but Exemption 7(C) applies only to "records or information compiled for law enforcement purposes." Defendant has made a satisfactory showing that the documents at issue were compiled for law enforcement purposes. *See* DSMF5 ¶ 9; 6th Sher Aff. ¶ 10. All persons whose privacy interests are at stake in this phase fall into categories discussed above at Section III(2) of this Memorandum. For the reasons stated there, these names on the sample documents, and on the documents of which they are representative, were properly withheld under 5 U.S.C. § 552(b)(7)(C).

3. Defendant has withheld the identity of confidential sources in Docs. 763–767, and 769 pursuant to Exemption 7(D) (law enforcement records or information exempt to the extent that production "could reasonably be expected to disclose the identity of a confidential source."). *See Vaughn* index No. 4, Part B. The defendant states that these sources were expressly promised confidentiality. *Id.; see also* Defendant's 5th Reply at 12–14. Defendant states further that "[s]ince those sources have been promised confidentiality with respect to those documents and since those sources continue to provide OSI ongoing assistance in its law enforcement activities, the breach of the pledge of confidentiality would interfere in OSI's future law enforcement functions." Defendant's 5th Reply at 13–14. Defendant reviewed these documents again following this Court's Order of August 24, 1987, and determined that some additional individual pages of Docs. 763–767 could be released without compromising the identity of the sources. *Id.* at 13–14. These pages were released to plaintiffs and attached to Defendant's 5th Reply. Defendant also determined, however, that any further release of those documents would disclose the identity of the confidential source from which they were derived. *Id.* at 13. Accordingly, for the reasons discussed above at Section III(4) of this Memorandum, the

identity of these sources was appropriately withheld under 5 U.S.C. § 552(b)(7)(D).

4. Defendant initially withheld information in document 798 pursuant to Exemption 7(A) (law enforcement records or information the disclosure of which "could reasonably be expected to interfere with enforcement proceedings.") *See Vaughn* index No. 4, Part B. Defendant has now released Doc. 798 in full as an attachment to its 5th Reply, in light of the fact that the information contained in this document has now been released to Demjanjuk by the Israeli authorities. Defendant's 5th Reply at 20.

5. Defendant invokes the work product privilege under Exemption 5 to withhold Docs. 777–791 in their entirety. Defendant also invokes Exemptions 6, 7(C), and 7(D) to withhold these documents in part. *See* Defendant's Supp. Response at 2; Defendant's 5th Reply at 9. Documents 777–791 are the summaries (or "protocols") of interviews of Soviet citizens conducted by Soviet officials in the Soviet Union in 1979. Defendant's 5th Reply at 7. Defendant states that "[t]hese summaries (which are *non-verbatim* witness statements) were prepared by Soviet authorities and the interviews were conducted by them at the request and direction of Justice Department attorneys assigned to the then pending *Demjanjuk* denaturalization case." *Id.* Defendant states further that these Soviet citizens have not testified in any of the *Demjanjuk* proceedings nor have their interview summaries ever been offered into evidence. *Id.*

Defendant contends that these *non-verbatim* witness statements "prepared at the request and for the use of Justice Department attorneys assigned to the *Demjanjuk* denaturalization case" are attorney work product protected from disclosure by Exemption 5. *Id.* at 9. Defendant also indicates that these statements "were protected from civil discovery" in the *Demjanjuk* denaturalization case. *Id.* Defendant argues that the fact that these statements were compiled by Soviet officials does not diminish their status as work product, particularly because the *Demjanjuk* denatu-

ralization proceedings raised the possibility of Demjanjuk's deportation to the Soviet Union. *Id.* at 9–10.

In Defendant's Supplemental Response, defendant elaborates its argument that these documents are attorney work product, noting that the 1970 amendments to Rule 26 of the Federal Rules of Civil Procedure extended work product protection to materials prepared by the representative or agent of an attorney as well as by an attorney. Defendant's Supp. Response at 4–5. Defendant cites precedents in which courts have applied Exemption 5 to withhold information gathered for government attorneys by nongovernmental employees. *See, e.g., Exxon Corp. v. Federal Trade Commission*, 476 F.Supp. 713 (D.D.C.1979) (documents prepared by outside economic consultants for the FTC at the direction of attorneys preparing for an anti-trust suit constitute work product protected by Exemption 5). In essence, defendant argues that it is the *function*—not the identity—of an attorney's agent or representative that is relevant to determinations of attorney work product. Defendant's Supp. Response at 5–6. Indeed, defendant contends that OSI must *of necessity* rely on foreign government officials to compile evidence for OSI's use in litigation in the United States. *Id.* at 6 n. 2. Citing *Bevis*, 801 F.2d 1386, in which the Court of Appeals held that Exemption 7(A) applied to FBI records concerning the murders of American citizens in El Salvador which were compiled at the request of the Salvadoran government, defendant argues by analogy that material gathered by foreign authorities for OSI attorneys for domestic law enforcement purposes should be protected under FOIA Exemption 5. Defendant's Supp. Response at 6–7.

In contrast, plaintiffs argue that "the degree of specificity that should be required to establish that the Soviet police were acting pursuant to the directions and under the control of the OSI (in fact as its agents) should be considerably greater than that required to establish the usual third party agency relationship with an attorney for work product purposes." Plaintiff's Supplemental Memorandum in Oppo-

sition to Defendant's Fifth Motion for Partial Summary Judgment ("Plaintiff's Supp. Mem.") at 11. In this case, plaintiffs note that "[i]ntuitively the requisite degree of supervision and control would not appear to exist." *Id.* at 11 n. 10.

■ The work product precedents cited by defendant do not extend as far as defendant would have us go in this case. It simply strains credulity to base a finding of work product on the assumption that the Soviet interviewers in this case were essentially agents of OSI attorneys. The situation here is not comparable to cases where work product claims are pressed by co-defendants in litigation or by parties to a merger. *Cf. United States v. Gulf Oil Corp.*, 760 F.2d 292 (Temp.Emer.Ct.App. 1985); *United States v. American Telephone & Telegraph Co.*, 642 F.2d 1285, 1298–99 (D.C.Cir.1980). Furthermore, defendant has not made a sufficient showing that the interview summaries at issue here were, in fact, protected from civil discovery in the *Demjanjuk* denaturalization case. Accordingly, these statements are not exempt from disclosure as work product under 5 U.S.C. § 552(b)(5).

Even if defendant has not established that the Russian witness summaries are attorney work product protected from disclosure in their entirety by FOIA Exemption 5, defendant contends that it can withhold Docs. 777–791 in part under Exemptions 6, 7(C), and 7(D). *See Vaughn* index No. 4, Part B; Defendant's Supp. Response at 2; Defendant's 5th Reply at 9. More specifically, defendant contends that the identities of the sources in Docs. 777–791 are protected from disclosure by Exemption 7(D) which applies to law enforcement records or information to the extent that production "could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis." 5 U.S.C. § 552(b)(7)(D); 3d Ross Dec. ¶ 4, at 3. Defendant also contends that the identities of the individuals mentioned in Docs. 777–791, both those persons interviewed and those who questioned them, must be withheld to protect them from an unwarranted invasion of their privacy. Defendant's 5th Reply at 10–11. As a threshold matter, defendant has made a sufficient showing that Docs. 777–791 are "records or information compiled for law enforcement purposes" under 5 U.S.C. § 552(b)(7). The interview summaries were compiled by Soviet officials at the request of DOJ or INS attorneys assigned to the then pending *Demjanjuk* denaturalization case. Defendant's 5th Reply at 7; Defendant's Response to Plaintiff's Supp. Mem. at 7–8.

Exemption 7(D) protects the identity of sources if the source "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred...." *Lesar*, 636 F.2d at 490. In *Vaughn* index No. 4, Part B, defendant indicates that the sources interviewed in Docs. 777–791 were expressly promised confidentiality. At the August 28, 1987 hearing, defendant also took the position that limited disclosure of identities in civil discovery does not amount to a public disclosure that waives FOIA Exemption 7(D). Transcript at 11. The defendant also stressed that most of the information contained in Docs. 777–791 was never requested or revealed in civil discovery. *Id.* at 12.

Defendant did disclose, however, some of the information contained in Docs. 777–791 in 1980 in response to interrogatories filed by Demjanjuk's defense counsel in the *Demjanjuk* denaturalization suit. More specifically, the government disclosed the names of five Soviet witnesses who made a positive photo identification of John Demjanjuk, the dates and places at which those identifications took place, the name of the person who conducted the identification procedure and the names of other persons present. *See* the Government's Second Supplemental Answers to Defendant's Fourth Set of Interrogatories, dated September 5, 1980, attached to Defendant's Supp. Response. The government also disclosed the names of four Soviet citizens who failed to make a positive photo identification of Demjanjuk. *Id.*

■ The Russian documents at issue in this FOIA suit, Docs. 777–791, include fifteen interview summaries. *Vaughn* index No. 4, Part B. Only five of these documents match the dates, cities, and fact of positive photo identification disclosed in the 1980 interrogatory response. Those five documents are Docs. 786, 787, 788, 789, and 791. The corresponding identities disclosed in the 1980 interrogatory response are presumably the "sources" in these five documents. There are ten remaining Russian documents described in *Vaughn* index No. 4, Part B, including nine records of witness interviews, the descriptions of which contain no reference to photo identification at all. The sources in these ten documents were not disclosed by the DOJ in the 1980 interrogatories. Accordingly, in light of the fact that these individuals were given assurances of confidentiality by the government, their identities are exempt from disclosure under 5 U.S.C. § 552(b)(7)(D). *See Lesar,* 636 F.2d at 490 (if source "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred ... the agency can withhold the names, addresses, and other information that would reveal the identity of a confidential source...."); *see supra* Section III(4) of this Memorandum.

■ In contrast, the government has not cited authority in support of its contention that the five sources in documents 786, 787, 788, 789, and 791 must still be regarded as confidential under FOIA Exemption 7(D). The government itself deliberately disclosed the names of those individuals in 1980 in response to interrogatories filed by Demjanjuk. By so doing, the DOJ waived the confidentiality of its relationship with those sources. This is not a case where a source's identity has become known through public leaks or inadvertent disclosures in miscellaneous proceedings. *Cf. Lesar,* 636 F.2d at 491. On the contrary, in this case, the DOJ itself consciously and deliberately disclosed to Demjanjuk in a civil discovery proceeding the identity of five confidential sources. The names are, by the government's own actions, a matter of public record. The government did not resist responding to the interrogatory, which supports an inference that it did not want to resist disclosure but rather wanted to reserve the possibility of using the information in the *Demjanjuk* civil proceedings. Under the facts of this case, the government can fairly be held to have waived its 7(D) confidential source claim under FOIA.

Defendant also contends that the identities of the individuals mentioned in Docs. 777–791, both those persons interviewed and those who interviewed them, must be withheld to protect them from an unwarranted invasion of their privacy. Defendant's 5th Reply at 10–11. The individuals whose privacy is at stake in these documents—namely, potential witnesses and foreign investigators—are categories of persons who have protectable privacy interests, as discussed above in Section III(2) of this Memorandum. However, the type of invasion or harm likely to accompany disclosure of their identity is less clearly articulated by defendant here than in earlier phases of this litigation. Defendant does stress that "none of the protected persons mentioned in these documents ever testified in any of the *Demjanjuk* proceedings held in the United States or Israel; their privacy from public disclosure has therefore remained intact to the present day." *Id.* These individuals were also expressly promised confidentiality by the United States, *see Vaughn* index No. 4, Part B, which bears on their expectation of privacy.

Plaintiffs contend that they believe the interview summaries in Docs. 777–791 may contain material exculpatory of John Demjanjuk. Plaintiff's Supp. Mem. at 5 n. 3. More specifically, they seek possible interview reports "which identify Mr. Demjanjuk as being present at some place other than the Treblinka death camp during the period September 1942 to August 1943 ... because several of the witnesses who have testified for the prosecution [in Israel] have stated that "Ivan the Terrible" was present at Treblinka the entire period." *Id; see also* Transcript at 58, 61.

Defendant argues that plaintiffs have not advanced a superceding *public* interest

in disclosure of the names of the individuals in Docs. 777–791, but are rather acting on behalf of Demjanjuk to further a decidedly private interest. Defendant's 5th Reply at 11. *See Lloyd and Henniger,* 526 F.Supp. at 487 ("... a party's asserted need for documents in connection with litigation will not affect, one way or another, a determination of whether disclosure is warranted under FOIA."). Moreover, as defendant documents, Mr. Demjanjuk obtained the names of the Soviet interviewees who positively identified Demjanjuk seven years ago in an interrogatory response filed by the United States on September 5, 1980 in the *Demjanjuk* denaturalization suit. Defendant's 5th Reply at 7 n. 6; *see also* The Government's Second Supplemental Answers to Defendant's Fourth Set of Interrogatories, dated September 5, 1980, attached to Defendant's Supp. Response.

■ FOIA is emphatically *not* designed for use as a general discovery device for purposes of civil or criminal litigation. The Supreme Court has consistently rejected a construction of FOIA that would allow it to be used as a mechanism to supplement discovery. *See United States v. Weber Aircraft Corp.,* 465 U.S. 792, 801, 104 S.Ct. 1488, 1493, 79 L.Ed.2d 814 (1984). Moreover, defendant argues that "if Demjanjuk and/or his son-in-law seriously wished to advance his possible private interest in obtaining the testimony of these Soviets, he should attempt to do so by means of whatever Israeli procedures for international judicial assistance are available rather than FOIA, under which privacy concerns give way only to the public interest." Defendant's 5th Reply at 11 n. 7. Plaintiffs respond that they are aware of "no process whereby the Israeli government could request the production by the Soviet Government of the transcript of the interview of these witnesses." Transcript at 59.

■ It is true that "exemption 7(C) does not require a balance tilted emphatically in favor of disclosure." *Bast,* 665 F.2d at 1254. However, it is also true that, quite apart from whether or not plaintiffs have demonstrated a compelling public interest in disclosure, the government has

the burden of showing that the personal privacy interests of specified individuals "could reasonably be expected" to face unwarranted invasion upon disclosure of certain law enforcement records or information. In contrast to defendant's other invocations of Exemption 7(C) throughout this litigation, in which the risks of disclosure have been well documented in supporting affidavits, defendant has not discussed any risks of harassment or annoyance that could be expected to flow from public disclosure of the names of these Soviet citizens or investigators. Defendant has not alleged that public disclosure of their names in the United States under FOIA could be expected to have any impact whatsoever in the Soviet Union, either on the individuals interviewed or on those who conducted the interviews. In short, defendant has not provided this Court with reasons why it should find that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." In the absence of such a showing by defendant, the names of the individuals mentioned in Docs. 786, 787, 788, 789, and 791 must be disclosed. Those five documents must be released to plaintiffs in full since the information they contain is protected neither by FOIA Exemption 5 nor by FOIA Exemption 7(D). In contrast, the identities of the sources in Docs. 777, 778, 779, 780, 781, 782, 783, 784, 785, and 790 remain protected under FOIA Exemption 7(D).

6. The remaining items withheld from disclosure by defendant in this fifth phase were properly withheld under FOIA Exemption 5. 5 U.S.C. § 552(b)(5). *See Vaughn* index No. 4, Parts A and B; 5th Sher Aff. ¶¶ 19(b), 23(a); Defendant's 5th Reply at 15–19. Plaintiffs contend that defendant has not set forth sufficient facts to support its claims of attorney work product under Exemption 5. Plaintiffs' 5th Opp. at 9–10, citing *Puerto Rico,* 823 F.2d at 584. However, for the reasons stated above in Section II(A) of this Memorandum, defendant has provided an adequate factual basis for evaluation of its claims of work product exemption. Moreover, independent examination of the work product claims set

forth in *Vaughn* index No. 4, Parts A and B, establishes that they do not differ materially from the work product exemptions recognized in the Memorandum of May 15, 1987. For the reasons discussed there and in Section III(6) of this Memorandum, Exemption 5 was properly applied to Sample Docs. 607 and 746, and to the other documents in this fifth phase for which the defendant invokes the work product privilege. Defendant also properly invoked the deliberative process privilege under Exemption 5 with respect to Doc. 539. *See* Defendant's 5th Reply at 16–17; *see also Ryan v. Department of Justice*, 617 F.2d 781, 789–91 (D.C.Cir.1980).

Accordingly, an accompanying Order grants defendant's fifth motion for partial summary judgment, except that Docs. 786, 787, 788, 789, and 791 must be released to plaintiffs in full; and documents 777, 778, 779, 780, 781, 782, 783, 784, 785 and 790 must be released to plaintiffs except for those deletions necessary to protect the identities of the confidential sources therein pursuant to Exemption 7(D).

### ORDER

For the reasons stated in the accompanying Memorandum (a copy of which, together with a copy of this Order, the parties may wish to file promptly with the Clerk of the Court of Appeals), it is this 18th day of September, 1987, hereby

ORDERED: that defendant's second motion for partial summary judgment is GRANTED, except that defendant shall disclose the budget appropriation numbers in documents 185 and 266; and it is further

ORDERED: that defendant's third motion for partial summary judgment is GRANTED; and it is further

ORDERED: that defendant's fourth motion for partial summary judgment is GRANTED; and it is further

ORDERED: that defendant shall ascertain whether copies of the 32 "Original Release (Undifferentiated)" documents released by the Immigration and Naturalization Service to attorneys for Mr. John Demjanjuk in August of 1986 have been re-

leased by defendant to plaintiffs. If such copies have not been produced, defendant shall provide plaintiffs with a complete set of these copies on or before the seventh day after the date of this Order; and it is further

ORDERED: that defendant's fifth motion for partial summary judgment is GRANTED IN PART and DENIED IN PART; and it is further

ORDERED: that documents 786, 787, 788, 789, and 791 shall be released to plaintiffs in full; and documents 777, 778, 779, 780, 781, 782, 783, 784, 785 and 790 shall be released to plaintiffs except for those deletions necessary to protect the identity of the confidential sources therein pursuant to Exemption 7(D).